GULLIHER v. C., R. I. & P. R. Co.

1. **Practice**: NOTICE OF APPEAL: EXCEPTIONS. Where, during the trial, numerous exceptions were taken to the ruling of the court, many of them to the giving and to the refusing to give instructions, and on June 21st there was a verdict and judgment for plaintiff, but no formal exception entered at the end of the judgment entry, and on June 24th defendant filed a motion to set aside the verdict and for a new trial, setting out the errors complained of pending the trial, and also that the verdict was not supported by sufficient evidence and was contrary to law, which motion was, on June 27th, overruled, to which ruling defendant at the time excepted, held,

   1. That the exception taken to the ruling denying a new trial was a sufficient exception to the judgment.
   2. That a notice of appeal from the *judgment* rendered on the 21st day of June properly brought up in the Supreme Court all the objections properly saved on the trial of the case, including the motion for a new trial.

2. ————: INSTRUCTIONS: FRAUD. Where fraud in procuring a written contract of settlement was pleaded to avoid the effect of the writing, but the facts proved did not constitute fraud, the court should, when requested, have instructed the jury that there was no evidence of fraud.

3. **Contract**: NEGLIGENT SIGNER BOUND. It is well settled that where a party having capacity to read an instrument signs it without reading it, and without requesting it to be read to him, he is bound thereby, if no device is used to put him off his guard.

4. **Practice**: SPECIAL INTERROGATORIES. When defendant requested the court to submit to the jury special interrogatories, few in number, easily understood and not tending to confusion, which called for answers to ultimate facts in issue, and which were not vulnerable to any valid objection, the request should have been granted.

*Appeal from Lee Circuit Court.*

WEDNESDAY, OCTOBER 4.

THIS is an action to recover for a personal injury received by the plaintiff while in the employment of the defendant and engaged in coupling cars. There was a trial by jury, and a verdict and judgment for the plaintiff. Defendant appeals. The facts appear in the opinion.

*Anderson Bros. & Davis* and *M. A. Low*, for appellant.

*Dryden & Dryden* and *Hagerman, McCrary & Hagerman*, for appellee.

ROTHROCK, J.—I. During the progress of the trial numerous exceptions to the rulings of the court were entered at the instance of the defendant. These exceptions were principally made to the refusal by the court to give instructions to the jury. The verdict was returned on the 21st day of June, 1881, and judgment was entered on the same day. There is no formal exception entered at the end of the judgment entry. On the 24th day of the same month, the defendant filed a motion for a new trial which set out the errors complained of pending the trial, and also the objection that the verdict was not sustained by sufficient evidence, and was contrary to law. This motion was overruled on the 27th day of June, and the defendant excepted to the ruling at the time. The body of the notice of appeal is in these words: "You are hereby notified that defendant in the said action has appealed from the judgment of the Circuit Court aforesaid, in favor of plaintiff, at the June term, 1881, on the 21st day of June, 1881, to the Supreme Court of Iowa, and that said appeal will come on for

hearing and trial at the regular term of said court to be held at Des Moines, commencing on the first Monday of June, 1882."

The plaintiff by a motion seeks to have all the instructions to the jury, including those given and refused, and the assignments of error, and other parts of the record objected to by appellant, stricken from the record, because the notice of appeal is not sufficient to bring up any ruling except the judgment entry. In other words, it is claimed that the appeal has not been taken from any ruling or act of the court excepting the entry of judgment. It is further claimed that no appeal will lie from the judgment because it was not excepted to.

These objections to the standing of appellant in this court are urged at length and with great earnestness, and reliance is placed on section 3178 of the Code which is as follows:

"An appeal is taken by the service of a notice in writing on the adverse party, his agent or attorney who appeared for him in the court below, and also upon the clerk of the court wherein the proceedings were had, stating the appeal from the same, or from some specific part thereof, defining such part."

It is argued that, as the appellant in its notice defined the judgment as the part appealed from, it cannot be heard to complain of any other part of the proceedings, and, as he did not except to the judgment, it cannot be heard to complain of that. It is urged that the appellant should have stated in the notice that it appealed from the "proceedings," and that the use of the word "judgment" instead is not sufficient. It appears to us that this is a very technical view to take of the statute. We have no disposition to go into nice technical distinctions as to the meaning of the word "proceedings". If we were to hold that a notice in the form of that found in the record in this case does not bring up all of the objections properly saved upon the trial of the case, including the motion for a new trial, we would surprise the profession through-

out the State, and, no doubt, with one dash of the pen, dispose of about nine-tenths of the appeals now pending for submission in this court.

It remains to be determined, so far as this question of practice is involved, whether the appellant has lost all right to complain of the judgment because no exception was noted thereto at the time it was entered. The verdict was found June 21st, and judgment was entered the same day. The defendant, as was its right, filed its motion for a new trial within three days. Code, § 2838. It had this right, no matter what judgment had been entered up in the meantime. This motion for a new trial, and to set aside the verdict, set forth fully the errors complained of. It was as much an attack on the judgment as on the verdict, for the former could have no validity without the latter. If the motion had been sustained, the judgment would have gone with the verdict. But the motion was overruled, and to the ruling defendant excepted. That is, the exception was to the ruling denying a new trial. This was a sufficient exception to the judgment.

In *Aldrich v. Price*, 57 Iowa, 151, we held that, where a motion in arrest of judgment was overruled and the ruling excepted to, it was unnecessary to except to the judgment afterwards rendered. And in *Barnhart v. Farr*, 55 Iowa, 366, where no exception was taken to the judgment, we held that an exception taken to the conclusion of law upon which the judgment was founded was sufficient.

We are cited by counsel for appellant to *Eason v. Gester*, 31 Iowa, 475; *Joliet Iron & Steel Co. v. C. C. & W. Railway Co.*, 50 Iowa, 455; *Redding v. Page*, 52 Iowa, 406; and other cases which, it is claimed, hold that the judgment entry must be excepted to. An examination of those cases will' show that they are unlike the case at bar. None of them determine the effect of an exception to the overruling of a motion for a new trial where a judgment has been actually entered after verdict and before the motion is made.

II. The defendant in its answer set up as a settlement of

the cause of action an instrument in writing in the following language:

"K. & D. M. DIVISION.

"Name, John G. Gulliher, Keokuk. For the consideration of $104.68 received of the Chicago, Rock Island & Pacific Railroad Co., I hereby release and discharge said company from all claims and demands against it, and especially from all liability for loss or damage to me by reason of having my thumb and two fingers on left hand crushed while coupling cars in yard at Keokuk station (which necessitated the amputation of said thumb and two fingers), which occurred on or about the third day of March, A. D. 1879.

"Received payment, Keokuk, Iowa, April 30, 1879.

"Keokuk Division.	"JOHN G. GULLIHER [L. S.]"

Examined and correct,	The above was read to and
C. F. WINSLOW,	signed by the said John G. Gul-
　　　　　Auditor.	liher in our presence, at Keokuk,
F. K. HAIN,	on the 30th day of April, 1879.
　　　　Approved.
A. KIMBALL,	W. K. LUCAS.
　　　Gen'l Sup't.	C. H. HAIN.

The plaintiff replied to the plea of settlement by averring in substance that a paper which purported to be a receipt, but which he supposed to be a receipt for time lost, was obtained from him, but that it was obtained through fraud and misrepresentation. The reply does not set forth in what the fraud and misrepresentation consisted. The court gave to the jury the following among other instructions upon this branch of the case:

"13. The defendant pleads a settlement in full with the plaintiff for the injury complained of, and sets out a copy of the contract of settlement and receipt relied upon in his answer; plaintiff does not deny the genuineness of the signature under oath thereto, and it must in law be deemed genuine and admitted, and the burden of proof rests upon plaintiff to show that it was procured by fraud. If he has not so shown, your verdict should be for the defendant.

"14. If the jury find from the evidence that plaintiff signed the receipt in evidence by reason of the fraud of the managers of the defendant, who by fraud and artifice induced him to believe that it related only to money due him for time lost, and that it had nothing to do with his claim for damages sued for herein, and if he (the plaintiff), by the fraudulent act of said defendant, or its managers, did not know it covered his claim for damages, then said receipt would be no bar to the recovery of the amount claimed in this action."

The defendant excepted to these instructions, and asked the court to instruct the jury that the evidence did not sustain the allegation of fraud in procuring the written instrument, and that the verdict should therefore be for the defendant.

We have searched the record in vain for any evidence of fraud in procuring the release, and we think the court should have stated to the jury that there was no such evidence, and, under the thirteenth instruction above set, out the jury should have so found.

Plaintiff's counsel claim that the abstract of the defendant does not purport to be an abstract of all the evidence, and that, therefore, the evidence cannot be considered. This we think is a mistake. We need not set out our reasons for this holding, at length. The objection to the recitals in the abstract are too trivial to require extended notice.

This instrument in writing is more than a mere receipt; it is a contract of settlement, and is binding on the parties unless it was procured by fraud. The plaintiff states that at the time he signed some paper, which it appears was the release in controversy, he did not read it and, "as his mind served him," it was not read over to him, but that he supposed it was merely a receipt for pay for the time he had lost by reason of the injury, and that he was led into this belief by previous communications with the superintendent of the company. He further states that his hand pained him greatly

at the time he affixed his signature. But he does not state that any false representation was made to him when he signed the release, nor that he was unable to read it, nor that an examination and reading of it was refused him. It is true that he states that some time before the release was made he was promised that a house would be bought for him at Bentonsport, so that he need not pay rent, and employment was to be given him there by the defendant. Whether the title to the house was to be made to him does not appear. These promises are claimed to be fraudulent. They cannot be claimed as fraudulent representations. They are but promises to be performed in the future, which are everywhere held to be insufficient to avoid contracts on the ground of fraudulent representations. Whether such false promises may be made the basis of an action for damages we need not determine.

It is well settled that, when a party having capacity to read an instrument signs it without reading it, and without re-

3. CONTRACT: negligent signer of bound.

questing it to be read to him, and if no device is used to put him off his guard, he is bound by it. *McCormack v. Molburg*, 43 Iowa, 561, and cases cited. It is claimed that under the ruling in *Hopkins v. Hawkeye Insurance Company*, 57 Iowa, 203, the plaintiff in this case is entitled to be relieved from the contract. That was a case where a person, unable to read the writing by reason of the loss of his spectacles, relied upon the agent of the defendant to read the instrument to him, who read it falsely, and with intent to defraud him. It was held that under the evidence it was proper to submit to the jury the question whether or not the plaintiff exercised reasonable care and diligence to ascertain its contents. The rule in Molburg's case was in no manner questioned, but was approved.

We are cited to the cases of *Ill. Cent. R. R. Co. v. Welch*, 52 Ill., 183; *Schultz v. C., & N. W. R. R. Co.*, 44 Wis., 638; and *C. R. I. & P. R. R. v. Doyle*, 18 Kas., 58, as holding that (in the language of counsel) "if the employe,

after injury, signs a receipt for all damages sustained, without knowing its contents, or without intending to sign such an instrument, but under the belief that it was merely for time lost while laid up with the injury, then the receipt is no bar." If the law upon this question be as broad as stated by counsel, courts might about as well declare at once that all the rules governing contracts in writing are abrogated. All that would be required to avoid them would be to show that the party charged signed the instrument without knowing its contents. In the first case cited, the trial court instructed the jury that an instrument much like that in the case at bar did not release the cause of action. The cause was reversed because of this instruction. The court said: "The release is in terms sufficiently broad to cover the present action." The question as to what fraudulent acts or devices would avoid the release, was not in the case, and what is said by the court on that subject implies that, to avoid it, there must be false representations used in obtaining the release. In the case of *Schultz v. R. R. Co.*, it is said that "if the plaintiff signed the alleged discharge or acquittance without knowing its contents, and not intending to sign such an instrument, he is not bound by it." The question received no other or further consideration. If the court intended by this remark to exclude the idea of fraud in obtaining the signature to the instrument, we cannot assent to the doctrine of the case. It is proper to say, however, that the question of negligence in signing the instrument was not made nor discussed in the case.

In the case of *R. R. Co., v. Doyle*, it appears that the party who signed the receipt was not in his right mind and did not know what he was doing when he signed the instrument. Of course, the fact that the party was mentally incompetent to contract would avoid any instrument signed by him while in that condition. In the case at bar no such issue was made in the pleadings nor referred to in the instructions.

We need go no further in this case. The judgment must

be reversed, because there was no evidence that the release was obtained by fraud. But, lest this might be construed as an approval of the action of the court in refusing to submit to the jury the special interrogatories asked by the defendant, we will say that we think they should have been given. They call for answers to ultimate facts in issue in the case, are few in number and easily understood, do not tend to confusion, and are not vulnerable to any valid objection.

**4. PRACTICE:** special interrogatories.

REVERSED.