[No. 5149. Decided July 21, 1904.]

JOHN BJORKLUND, *Respondent*, v. THE SEATTLE ELECTRIC COMPANY, *Appellant*.[1]

COMPROMISE—RELEASE OF DAMAGES SECURED BY FRAUD—PARTIES NOT ON EQUAL FOOTING—QUESTION FOR JURY. In an action to recover for personal injuries sustained by an employe, whether the plaintiff was fraudulently misled and induced to sign a release of his damages is a question for the jury, where it appears that the company's physician told the plaintiff that his injury was slight and he would be well in a short time, but wrote a letter showing a serious injury, and when it appears that the plaintiff understood English imperfectly, and supposed he was signing a receipt for wages for the time he had lost, then paid to him, under a promise for future employment, and under the representations of the company's claim agent that it was such receipt, and that from long service he placed reliance in the defendant's agents and physician; since the jury could reasonably find that the parties did not stand upon an equal footing, and that the plaintiff was justified in placing confidence in the representations because of his long established relations with the company.

SAME—EXPRESSIONS OF OPINION. In such a case it is for the jury to say whether the physician's statements concerning the extent of the plaintiff's injuries were mere expressions of opinion or statements of fact upon which the plaintiff had a right to rely.

SAME—SURRENDER OF AMOUNT PAID ON SETTLEMENT. It is not necessary to return a sum received in a settlement induced by

[1]Reported in 77 Pac. 727.

fraud, before bringing action on the demand, but the same may be credited thereon.

MASTER AND SERVANT—RELEASE SECURED BY FRAUD—SERVANT'S CONTINUANCE OF EMPLOYMENT—ESTOPPEL. Where a servant was induced, by an agreement for future employment and false representations respecting the extent of his injuries, to sign a release for personal injuries sustained through the negligence of the master, the fact that he shortly afterwards went back to work under representations of the master's claim agent and physician that his injuries were slight, and worked and received wages for about a year and a half, does not militate against his recovery for the injuries received.

Appeal from a judgment of the superior court for King county, Hatch, J., entered November 16, 1903, upon the verdict of a jury rendered in favor of the plaintiff for $2,500 for personal injuries. Affirmed.

*Hughes, McMicken, Dovell & Ramsey,* for appellant.

*George F. Aust* and *G. Meade Emory,* for respondent.

HADLEY, J.—This is an action for damages for personal injuries received by respondent while traveling as a passenger upon one of appellant's cars. Respondent was at the time, and for several years prior thereto had been, an employe of appellant, engaged in rendering services about the car barn of the railway company, but when he received his injuries he was a passenger on his way to his home, after completing a day's work, and he says he had paid his fare as the other passengers had done.

The question of want of original liability is not urged upon this appeal, but it is contended that respondent had, prior to bringing the action, for a consideration, fully released appellant from all claims for damages. In reply to the answer setting up the release, respondent alleged, that, by reason of his long employment by appellant, he had great confidence in the company's agents, physician,

and representatives; that he understands, very imperfectly, the English language, and can, with great difficulty, only read the simplest English words and phrases; that at the time of signing the alleged release he did not obtain legal advice, and was entirely ignorant of his legal rights, and of the extent of his injury; that appellant, well knowing the above facts, did, by its agents, to wit, its superintendent, claim agent, and physician, with intent and purpose of intensifying respondent's ignorance as to his legal rights and physical condition, falsely and fraudulently represent to him that it was inadvisable for him to consult a lawyer; that his injuries were such that, without doubt, he would be entirely well within six weeks' time at most, and that he was even then able to return to work; that appellant was willing to pay him his wages until he was able to return to work, and was also anxious to have him continue in its service; that it would give him a good easy job, soon raise his wages, and give him ample opportunity for promotion; that appellant's claim agent and superintendent then informed him that, in order to carry out said arrangement for him to draw his wages and get an easy job, it was necessary for him to sign a writing, which was then for the first time produced; that respondent could not read it, and that said claim agent then pretended to read it to him, but that he could not understand its meaning, and the claim agent knew he could not understand it; that he then told the claim agent that he could not understand it; that the claim agent thereupon told him that the only purpose of the paper was to have respondent go to work again for appellant, to give him a good easy job, with promise of promotion and raise of wages, and to enable him to draw his wages for the time he had been off duty; that appellant, its agents, servants, and physi-

cian, well knew of respondent's ignorance of his rights, and of the extent of his injuries; that he was relying upon their representations, and that but for such false representations he would not have signed any paper, a release or otherwise; that he was ignorant of the fact that he was signing any purported release for injuries of any extent or duration contrary to said representations, or any purported representations whatever, and that he never intended to release appellant; that the aforesaid promises, made by appellant's agents, have not been carried out; that respondent did not recover from his injuries within six weeks, has not yet recovered, is now unable to work by reason thereof, and is informed and believes that his injuries are of a permanent nature, and that he will always remain crippled and deformed. A trial was had before the court and a jury, and a verdict was returned for respondent in the sum of $2,500. Motion for new trial having been denied, judgment was entered upon the verdict, and the defendant has appealed.

It is assigned that the court erred in overruling appellant's challenge to the legal sufficiency of the evidence. Respondent was injured in a "head on" collision between two of appellant's cars, and his hand was severely cut, and his thigh was struck in such a manner as to cause a bad bruise to the muscles and to the bone, accompanied with sub-acute inflamation of the periosteum. Such was shown to be his condition by a letter in the record, written by the company's surgeon. This letter was written January 23, 1903, a short time before this suit was begun. The injury occurred April 23, 1901, nearly two years prior to the writing of this letter. In the course of the testimony of the doctor upon the witness stand, he said that he, as the company's surgeon, examined respondent's injuries soon after they were received, and that he then told re-

spondent that he thought he would be well in a short time. It is easy for us to believe, from a personal standpoint, that the doctor was originally simply mistaken in his judgment, but in view of the fact that his letter stated that "there was a bad bruise to the muscles and to the bone," and in view of his entire testimony upon the stand, we think it became a question for the jury whether the doctor, as surgeon of the company, knew at the time that respondent was seriously injured. He admits that he did not so inform respondent. If he knew the fact, and if his failure to so inform respondent misled the latter to his injury, it amounted to a legal fraud upon his rights. Appellant suggested that respondent had no right to rely upon the physician's statement, and that it is not bound thereby. We think the relation of employer and employe, having long existed between appellant and respondent, the latter had the right to place trust and confidence in the statements of the company's surgeon, who had examined the injuries at the instance of the company. It therefore became a question for the jury, even if they found that respondent knowingly signed a release, whether he did so as the result of being fraudulently misled by appellant's agents as to the extent and character of his injuries.

The testimony of respondent as to what occurred at the time of the signing of the alleged release is in substantial accord with the allegations of the reply hereinbefore set out. The chief negotiations leading up to the signing of the paper, aside from the statements of the physician heretofore discussed, were between the claim agent and respondent. The sum of $70 was paid by the claim agent to respondent at the time the paper was signed. That was the amount of wages, at respondent's rate, for the time he had been unable to work, and he says he was informed

by the claim agent, and that he understood, that he was simply signing a receipt for the wages, so that he could go to work again and get his easy job. The paper signed contained a release provision. It was prepared upon a printed blank and contained technical words, both in the printed and written matter, and bore evidence of careful and skillful preparation with a view to making it an effective release. In view of respondent's testimony as to his inability to read and understand English, and particularly such technical words and phrases as were contained in this paper, it became a question for the jury whether he did understand it, and whether the claim agent had intentionally and fraudulently misrepresented to him what it contained, and thereby purposely misled him into signing what he would not have signed, if its actual contents and legal effect had been fully made known to him. The jury could reasonably find, under the evidence, that appellant and respondent did not stand upon an equal footing, by reason of the latter's imperfect understanding of English and the legal effect of what he signed, or the nature and extent of his injuries, while the agents of the former were fully informed. They could also reasonably find that respondent was justified in placing confidence in what appellant's agents told him, because of his long established relations with the company.

That it is for the jury to say whether one has been fraudulently misled into signing a release of this character, under similar circumstances, is expressly held in the following cases: *Pioneer Cooperage Co. v. Romanowicz,* 186 Ill. 9, 57 N. E. 864; *Meyer v. Haas,* 126 Cal. 560, 58 Pac. 1042; *International etc. R. Co. v. Harris,* (Tex.) 65 S. W. 885; *Great Northern R. Co. v. Kasischke,* 104 Fed. 440; *Schus v. Powers-Simpson Co.,* 85 Minn. 447, 89 N. W. 68, 89 Am. St. 571, 57 L. R. A. 297; *Whitney & Star-*

*rette Co. v. O'Rourke,* 172 Ill. 177, 50 N. E. 242; *Indiana etc. R. Co. v. Fowler,* 201 Ill. 152, 66 N. E. 394, 94 Am. St. 158; *Burik v. Dundee Woolen Co.,* 66 N. J. L. 420, 49 Atl. 442; *St. Louis etc. R. Co. v. Phillips,* 66 Fed. 35. This court also discussed the general prinicples governing the procurement of a release by fraud in *Sanford v. Royal Ins. Co.,* 11 Wash. 653, 40 Pac. 609. There it was held that false statements as to the law, for the purpose of inducing one to sign a release of an insurance company, amounted to fraud, where the assured believed the insurer's agent to be his personal friend, and relied upon his statement that it would do no good to consult a lawyer, and also relied upon his superior knowledge and experience in such matters. In essential features that case contained elements not unlike those in the case at bar.

Appellant urges that the evidence is insufficient to establish fraud. It is true there is conflict, but the weight of the evidence must be determined by the jury. We think there is sufficient evidence bearing upon the question of fraud, if true, to support the verdict, and it is clearly established by the above authorities that when a purported release has been procured by fraud, it does not become a release, and is not a defense to an action of this kind. The cases cited by appellant are lacking in some elements found in the issues of this case. In *Pederson v. Seattle Consolidated St. R. Co.,* 6 Wash. 202, 33 Pac. 351, 34 Pac. 665, urged by appellant as decisive of this case, the respondent testified that he could understand and speak the English language, but could not write in that language; that the language used in the release was not read to him, and that if the words therein found had been read to him he would have understood them. It thus appeared that he was capable of understanding the paper upon merely hearing it

read, and there was much testimony that it was read to him. In the case at bar the respondent testified that he did not, even at the time of the trial, understand the meaning of terms used, such as "release," "acquit," "discharge," etc. In the Pederson case there was no evidence that even any false statement was made to him. He merely claimed that the paper he signed was not read to him. He did not deny that a paper was read to him, but asserted that it was not the one he signed; thus leaving it to be inferred that, if he signed the paper, which was present at the reading, it was not correctly read. Moreover, in that case there was no evidence that any representations were made respecting the nature or duration of the injuries. In *Albrecht v. Milwaukee etc. R. Co.*, 87 Wis. 105, 58 N. W. 72, 41 Am. St. 30, the opinion expressly states that "there is no pretense that the plaintiff was induced to sign the release through fraud or misrepresentation or that any deception was practiced by misreading it to him." In *Wallace v. Chicago etc. R. Co.*, 67 Ia. 547, 25 N. W. 772, the party who signed the release stated in his testimony that there was nothing to hinder him from reading the papers before signing them, and that nothing was done to keep him from reading them. It is stated that he was a railroad conductor, had been a deputy sheriff, could read writing, make out papers and transact any kind of ordinary business. The court concluded from these facts that no fraud appeared, and that he was therefore bound by the writing which he signed. In *Fuller v. Madison Mut. Ins. Co.*, 36 Wis. 599, an insurance policy was involved. The applicant had been previously insured in the same company, and was held chargeable with notice of its bylaws and routine of business. The opinion states: "There is no pretense that he was overreached or deceived otherwise than

in the fact that he could not and did not read the policy. That was his own negligence. His want of English is no excuse." *Hawkins v. Hawkins,* 50 Cal. 558, was determined upon demurrer, and it is said that no relation of special trust or confidence existing between the parties appeared, and that the terms and conditions of the writing were equally open to both. In *Chicago etc. R. Co. v. Belliwith,* 83 Fed. 437, the party who signed the contract testified that he did not ask any one to read it to him, and moreover his own attorney was present and assisted in the negotiations. In *Spitze v. Baltimore etc. Co.,* 75 Md. 162, 23 Atl. 307, 32 Am. St. 378, no representations of any kind were made when the release was signed, and no explanation was asked. The court found that the testimony did not prove fraud on the part of defendant, but carelessness on the part of plaintiff, and that such carelessness is not ground for the granting of any relief. In *Gulliher v. Chicago etc. R. Co.,* 59 Iowa 416, 13 N. W. 429, there was no evidence of any false representation when the release was signed. It neither appeared that the party was unable to read, nor that he was refused an examination and reading. The court say that they have searched the record in vain for any evidence of fraud in procuring the release. Having thus noted the cases cited by appellant upon this subject, we believe, for reasons above indicated, that they are all distinguishable from the case at bar, by reason of testimony in this case bearing upon fraudulent representations. The court therefore did not err in denying the challenge to the sufficiency of the evidence.

This disposes of appellant's chief contention in this case. Errors are assigned on the introduction of testimony. It is contended that evidence was improperly ad-

mitted as to statements made by the physician concerning the duration of respondent's injuries. Under the issues of the case, and within the authorities first above cited, the testimony was proper. It was for the jury to say whether the statements were intended to be, and were understood to be, mere expressions of opinion, upon which respondent had no right to rely; or whether it was intended that they should be received, and whether they were received, as the statements of facts, upon which he might and did rely, by reason of the relation of trust and confidence between himself and the agents of his long-time employer, and also by reason of the superior and peculiar professional knowledge of the physician. The same rule applies to statements said to have been made by the claim agent at the time the release was signed, and prior thereto. We think the instructions were clear and covered the law of the case.

The jury found the whole damage to be $2,570, and, following the court's instructions, they deducted $70 from said sum, which was the amount paid respondent when he signed the alleged release. Due credit was therefore given for the sum in respondent's hands, and, under the authorities, there was no necessity for its return before bringing this suit. It is true, respondent worked for and received wages from appellant for about a year and a half after his injuries, but he was presumably giving value received. A few weeks after the injury he began work again, as he says, under the statement of the physician, reinforced with that of the claim agent, that his injury was slight and that he would soon recover. But during the time he worked he seems to have suffered continually, and made no apparent progress toward recovery, which is not remarkable in view of the testimony of the physician that the bone was

badly bruised. We do not see that his struggle to earn a living, even though as an employe of appellant, should militate against his recovery for the injuries previously received, if he never released appellant from liability. The verdict of the jury says that he did not release the company in fact.

We see no reason for disturbing the verdict, or for granting a new trial, and the judgment is affirmed.

FULLERTON, C. J., and MOUNT. ANDERS, and DUNBAR, JJ., concur.