[No. 7870. Department One. September 25, 1909.]

PEACOCK MILL COMPANY, *Appellant*, v. W. J. HONEYCUTT *et al.*, *Respondents.*[1]

FRAUDS, STATUTE OF—ORAL SALE OF PERSONALTY. A parol sale of wheat f. o. b. cars, under a general custom in the locality that the title did not pass until delivery on board the cars, is within the statute of frauds.

TAXATION—LISTING—MISTAKE—EVIDENCE. The evidence of a mistake of fact in listing property for taxation must be clear, cogent, and convincing in order to overcome the presumption arising from the sworn detail sheet.

SAME — MISTAKE OF LAW — RELIEF—RESTRAINING COLLECTION OF TAX. Where wheat was orally purchased in February, but the title did not pass until it was delivered on March 7th, and the purchaser's manager, without looking up the dates but knowing that the wheat was delivered after that date, listed the same for taxation as of March 1st, after the assessor informed him that the vendor refused to pay, his error was a mistake of law, and not of fact, which a court of equity cannot relieve, by restraining collection of the tax, in the absence of fraud or misrepresentation.

Appeal from a judgment of the superior court for Walla Walla county, Brents, J., entered October 26, 1908, in favor of the defendants, dismissing an action to restrain the collection of taxes, after a trial on the merits before the court. Affirmed.

*E. L. Rinehart*, for appellant.

*Otto B. Rupp* and *Herbert C. Bryson*, for respondents.

[1]Reported in 103 Pac. 1112.

Gose, J.—This action, instituted by the appellant to re-strain the collection of certain taxes, terminated in a judg-ment of dismissal as to all the respondents except Reser. This appeal has been taken from such judgment.

The evidence shows that, in the latter part of February, 1907, the appellant offered the respondent Reser a definite price per bushel for 13,500 sacks of wheat delivered f. o. b. cars at Walla Walla, then in store in the warehouse in that city; that about February 28, 1907, the offer was accepted; that at that time there was no payment made upon the pur-chase price, and the entire contract rested in parol; that the first delivery was made on March 7, and the delivery was completed some time in April following. The evidence fur-ther shows that the words "delivered f. o. b. cars" at Walla Walla means in that community that the grain is to be de-livered by the vendor on board the cars before any title passes. This is shown to be the general custom in that local-ity. Indeed, it would seem that the term itself could have no other meaning. The contract when made was within the statute of frauds and not enforcible. Pierce's Code, § 5344 (Bal. Code, § 4577). The title remained in the vendor until there was a delivery.

On the 23d day of April, 1907, the wheat was listed and assessed as the property of the appellant. The detail sheet recites that it is a "schedule of the number and amounts of all personal property in the possession or under the control of W. W. Raymond, belonging to the Peacock Mill Company on the 1st day of March, 1907, listed by W. W. Raymond." On the date of the assessment, the schedule was signed "Pea-cock Mill Company by W. W. Raymond," and sworn to by the latter on that date. The complaint charged that the wheat was listed by Raymond, the appellant's then president, through a mistake of fact, and upon the representations of the county assessor that the appellant owned the wheat on March 1.

The evidence of mistake must be clear, cogent, and con-

vincing in order to overcome the presumptions arising from the sworn detail sheet. *Denny v. Holden, post* p. 22, 103 Pac. 1109. Measured by this rule, the appellant has not shown a mistake of fact existing at the date of the assessment. Mr. Raymond, the appellant's president, testified that he first told the assessor that he did not believe the appellant should pay the tax; that he suggested that the former should see the respondent Reser about it, and that he replied, "Very well, I will come back later and see what I can do about it"; that in about two weeks the assessor again came to him, and that he said to the assessor, "How did you make it about the wheat?" and that the latter replied, "Reser says he had sold the wheat and he wouldn't pay the taxes on it;" that he then said to the assessor, "I suppose that I will have to pay. I studied about it a while and then I signed that schedule." He further testified: "When he [meaning the assessor] first came into the office I had my mind made up not to sign it, and when he came back and said that Mr. Reser had said that he had sold the wheat and he wouldn't pay for it . . . I thought if he would not, we might just as well pay for it . . . I did not look up the dates." Again, he said: "All he told me was that Mr. Reser would not pay the taxes on the wheat." The witness made no direct statement that he signed the schedule believing at the time that there had been a delivery of the wheat before March 1. Indeed, the inference to be drawn from his testimony is that he knew when he signed the schedule that the wheat was delivered after that time. The assessor testified that Raymond "said that it was not delivered until after the 1st of March. He said that he had not loaded any. He said he purchased it some few days prior to the 1st of March. Had bought it f. o. b. and did not consider it his wheat until it was loaded, or something like that. I would not be positive as to the conversation." Speaking further as to the understanding between Raymond and himself, he said, "No, we had no question as to the time he purchased it, but as to the time it was delivered." It seems

clear from the evidence that the appellant did not list the wheat under a mistake of fact, or upon any representation made by the assessor that it owned the wheat on the 1st day of March.

If the schedule was signed under a mistake at all, it was as to when the title to the wheat vested in the appellant. This would be a mistake as to the law applicable to the facts. The general rule is that equity will not relieve against a mistake of law. This rule has its exceptions, but we are not aware of any exception to the general rule which would afford relief in the instant case. Fraud and misrepresentation are conspicuously absent. In discussing the rule and its exceptions in *McKay v. Smith*, 27 Wash. 442, 67 Pac. 928, we said:

"But it is said the mistake made was a mistake of law, and that equity will not relieve against a mistake of law. This is undoubtedly the general rule; but this rule, like many other general rules, has its exceptions, as well defined as the rule itself. It is held that equity will relieve against a mistake of law where the adverse party is seeking to gain, without consideration, an unconscionable advantage through the opportunities afforded him by the mistake, and the other party is innocent of blame."

See, also, *Mackintosh v. Renton*, 3 Wash. Ter. 431, 19 Pac. 144; 16 Cyc. 73, 75. There was in this case no statement or representation as to the law on the part of the respondents, and therefore such cases as *Sanford v. Royal Ins. Co.*, 11 Wash. 653, 40 Pac. 609, and *Bjorklund v. Seattle Elec. Co.*, 35 Wash. 439, 77 Pac. 727, do not apply. The trial court reserved the case for further proceedings as between the appellant and the respondent Reser. As to the latter's liability, we express no opinion.

It follows from what has been said that the judgment must be affirmed, and it is so ordered.

Rudkin, C. J., Fullerton, Chadwick, and Morris, JJ., concur.