[No. 11961. Department One. November 7, 1914.]

STEVE MILLER, *Respondent*, v. SPOKANE INTERNATIONAL RAILWAY COMPANY, *Appellant*.[1]

MASTER AND SERVANT—INJURIES TO SERVANT—NEGLIGENCE—SUDDEN STOP OF HAND CAR—EVIDENCE—SUFFICIENCY. There is sufficient evidence of negligence to sustain a verdict for personal injuries sustained by a section hand, going to his work on a hand car, where it appears that the brake on the car was defective, and was, without warning, suddenly applied by an assistant foreman with such force as to abruptly arrest the speed of the car, throwing plaintiff off in front of the car, which ran over him.

SAME—INJURIES TO SERVANT—DEFECTIVE APPLIANCES—ASSUMPTION OF RISK—NOTICE. A section hand did not, as a matter of law, assume the risks from riding upon a hand car supplied with a defective brake, negligently set by the foreman, and of which defect he did not have notice, the foreman having testified, in answer to a direct question, that he did not tell plaintiff of the defect, though he had previously testified that he had told "everybody."

RELEASE — FRAUD IN PROCUREMENT — EVIDENCE — SUFFICIENCY. Where a section hand sustained serious personal injuries, to the

[1]Reported in 143 Pac. 981.

extent, as found by the jury and court, of $7,500, and had been in the hospital for two and one-half months, the receipt of a check for $138, approximating the earning value of his lost time, and the signing of a release of all damages in consideration of $138, will not preclude recovery for the damages, but the jury is warranted in inferring fraud in procuring the release, where it appears that there were no negotiations for a settlement until the release was presented, that the plaintiff could not read or speak the English language, that it was not read or explained to the plaintiff, to the knowledge of the company's officers present, who did not know how the amount was determined, plaintiff's countryman who was present denied that he was asked to or did explain the contents of the release, and plaintiff testified he thought the amount was for his time lost while in the hospital; since it was the duty of the officers of the company to see that plaintiff understood the release, and it appears that the mind of one of the parties did not act on the subject-matter of the contract.

Release—Fraud—Tender. While it is not a condition precedent to action to tender back the amount received for a release of damages procured by fraud, the sum should be credited upon the judgment subsequently recovered for the damages.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered November 18, 1913, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a section hand, thrown from a hand car. Modified.

*Allen & Allen* and *Cannon, Ferris & Swan,* for appellant.

*Rosenhaupt & Grant, Plummer & Lavin,* and *Harry L. Cohn,* for respondent.

Gose, J.—This is an action to recover damages for personal injuries. There was a verdict and judgment for the plaintiff in the sum of $7,500. The defendant prosecutes the appeal.

The respondent was in the appellant's employ as a section hand. On the morning of the accident, the section crews were going to their work upon hand cars. There were five hand cars, two in advance of the car upon which the respondent was riding, and two behind. The front car was in charge of the appellant's foreman. The car upon which

respondent was riding was in charge of an assistant foreman.

It is alleged in the complaint, that the brake on the hand car upon which the respondent was riding was defective and in disrepair; that, while the car was going at considerable speed, the foreman negligently applied the brake, and that by reason of its defective condition and its negligent application, the car was suddenly stopped, throwing the respondent off of and in front of the car, and that the car passed over his body, causing him serious and permanent injury.

The appellant answered, denying that the car brake was defective or that it was negligently applied; and alleged affirmatively, (1) that the respondent jumped off of and in front of the car whilst it was in motion; (2) that if the brake was defective, the respondent knew it and assumed the risk; and (3) that the damages had been settled by the payment, acceptance, and retention of $138.

The respondent replied, denying the first two affirmative defenses; and, in respect to the settlement, alleged that he is a foreigner, unable to read or write English, and that if he signed a release he did not know what he was signing.

The first contention is that there was no evidence of negligence to submit to the jury. It suffices to say that evidence was submitted which tended to show that the brake upon the car was in disrepair, and that it was suddenly and without warning applied with such force as to abruptly arrest the speed of the car, throwing the respondent to the ground in front of the car. It is conceded that the hand car with five men upon it passed over the respondent's body.

It is next urged that, if the brake was defective, the respondent knew it and hence assumed the risk. The jury was warranted in believing, that the brake was defective, that the respondent did not know its condition, and that it was negligently set by the foreman. The foreman testified that he did not tell the respondent that the brake was defective. It is

true that he said he told "everybody," but, when directly asked if he told the respondent, he said that he did not.

The basis of the claim of contributory negligence is that the respondent stepped or jumped in front of the car as it was stopping. Upon this question there is a direct conflict in the testimony.

The respondent sustained the injury of which he complains about September 4, 1912. On September 7, the five men who were riding with him at the time he met his injury signed and delivered to appellant a statement to the effect that, as the car slowed down, the respondent stepped off of and in front of it, took about three running steps, stumbled and fell, and that the car then ran upon him and was derailed. In the month of November following, the respondent signed a statement purporting to be a full release and acquittance of all damages for his injuries, for a recited consideration of $138, which was paid to him a few days later by a check which he cashed. He retained the money and made no tender of it in the action. The witnesses who signed the statement to which we have adverted testified, that the foreman suddenly set the brake to the car; that the respondent was thrown off; that they did not understand English; that they told the foreman, Mike Smith, that the respondent was thrown off; that Smith translated it into English while another person wrote it, and that they signed the statement without knowledge of its contents. Two of the witnesses signed with a mark. The claim agent of appellant testified that the statement was explained to them, and that they said they understood it. There is no evidence of any negotiations for a settlement prior to the presentation of the written release by the appellant. The assistant roadmaster, who witnessed the release, testified that the release was not read to the respondent; that it was not explained to him to his knowledge, and that he heard Kokot, an Austrian, talking to the respondent in the Austrian language immediately before the release was

signed. The appellant's paymaster, who also witnessed the release, testified that he told the respondent that the release was a settlement of his claim; that he asked Kokot to explain it to the respondent in his own language, and that Kokot talked with the respondent. He said there were no prior negotiations, and that he did not know how the amount was determined. Kokot denies that he was requested to, or did, talk to the respondent about the release.

The respondent testified in reference to the release as follows:

"Q. What did you understand him to say the check would be for? A. I just understood a check. Q. What did you understand they were giving you the check for from what they said? A. I think it was just the time when I was in the hospital. Q. Well, did you think that from what they said? A. Yes, sir. Q. Now, Steve, you cannot speak the English language very well, can you? A. I cannot speak it at all. Q. Do you understand the English language very well? A. I don't understand it at all. Q. Now, before you signed this paper, did you ever talk to any one about them paying you for these injuries you received? A. I never talked to nobody. Q. Had any one talked to you or dealt with you in any way about it? A. No one. Q. Did any one read this paper over to you or pretend to tell you what you were signing? A. No, they did not read it nor say. Q. What is that? A. They did not read it to him, neither they told him what it was for. Q. Who else was there when you signed this? A. I don't know exactly; I think Nick Kokot was near there. Q. Did you ever tell Mike Smith before you got the check, after you had signed this paper, that you were waiting for a check for your injuries? A. Mike himself told me that I wait for a check until the timekeeper comes in and brings a check in. Q. Was that before or after you signed your release? A. After he made a cross on the paper. Q. Did you ever tell Mike Smith at any time that you were waiting for a check for your injuries? A. No. Q. Steve, did anybody tell you what this release was for? A. Nobody tell him. Q. Did you ask anybody? A. No. Q. Did you ask anybody to read it to you? A. No."

He also said that he could not read or write our language. The respondent, when he met his injury, was a common laborer, twenty-six years of age. There is testimony that he was then erect in mien and sound in body. Surgeons testified that, as a result of the accident, he is deformed and hopelessly crippled for life. On the other side there is testimony that he was stooped and round-shouldered before the injury, and that he was malingering at the trial. Other surgeons expressed the opinion that he has Potts disease or tuberculosis of the spine. It is not claimed that the damages are excessive if his condition is as serious as some of the witnesses testified, and if it is due to his being thrown from the car as some of the surgeons believe. He was in a hospital about two and one-half months. He was earning two dollars per day at the time he met his injury. It will be observed that the $138 approximates the earning value of the time lost between the date of the injury and the settlement.

The more difficult question upon the facts stated is, Does the release preclude a recovery? We think not. The jury were warranted in believing that the respondent could neither speak, read, nor write our language, and that he signed the release without knowing its contents, and believing that he was being paid for lost time. It is true that he did not testify to any actual misrepresentation of any fact. It is obvious, however, from his viewpoint, that there was no meeting of minds. All he knew was that he was to, and did, receive a check for $138. It is singular, indeed that there should have been a pretended settlement without any negotiations other than the presentation of the release. If the respondent is a deformed and hopeless cripple for life, and if his condition is due to the negligence of the appellant, and the jury has so found, the amount paid—$138—is trifling in comparison with the money value of the injury, fixed by the jury and the court at $7,500. Whilst written instruments cannot be set aside except upon clear and convincing evidence, and the court so instructed, it is not to be forgotten that circum-

stantial evidence is often more potent than direct evidence. The whole atmosphere of the case, as the jury was justified in viewing it, amounts almost to a demonstration that the respondent did not know what he was signing. *Mattson v. Eureka Cedar Lumber & Shingle Co.*, 79 Wash. 266, 140 Pac. 377; *Hicks v. Jenkins*, 68 Wash. 401, 123 Pac. 526; *Christianson v. Chicago, St. P., M. & O. R. Co.*, 67 Minn. 94, 69 N. W. 640; *Great Northern R. Co. v. Kasischke*, 104 Fed. 440. The case last cited is upon facts quite similar to the facts in the case at bar. In that case, the court said:

"It was clearly the duty of the master mechanic, when he was informed that the plaintiff could not read or write English, and that he relied upon him for an explanation of the contents of the paper, to explain its purport and the object of asking him to sign it, and to do so fully, in language which the plaintiff could comprehend. Because Nolan represented the defendant company in the transaction, it was his duty to exercise special care in explaining its contents to the plaintiff."

In the other cases which we have cited, there was evidence of actual misrepresentation of material facts. As we view it, however, the jury was warranted in inferring actual fraud. In view of the respondent's illiteracy, it was the duty of those representing the appellant to inform the respondent fully of the effect and contents of the release. They say they did. He and his witness Kokot say they did not.

The appellant argues that, if the respondent failed to have the release read or explained to him, he was guilty of negligence which precludes a recovery, citing *Garver v. Great Northern R. Co.*, 56 Wash. 519, 106 Pac. 192; *Golle v. State Bank of Wilson Creek*, 52 Wash. 437, 100 Pac. 984; *Pederson v. Seattle Consol. St. R. Co.*, 6 Wash. 202, 33 Pac. 351, 34 Pac. 665. In the *Garver* case, the plaintiff could read, and the negotiations continued over several days. The *Golle* case was a bill in equity to set aside deeds. The contention was that the deed executed by the plaintiff was obtained through fraud and misrepresentation. The plaintiff could

read and speak the English language, but claimed that he did not read the deed, but signed it believing that he was guaranteeing the payment of a $200 note. The *Pederson* case is not in harmony with our later cases.

It is argued that it was the duty of the respondent to have Kokot read or explain the instrument to him, and that if he failed to do so, he cannot recover. Kokot testified that he could hardly read our language. In *Chicago, St. 'P., M. & O. R. Co. v. Belliwith,* 43 Fed. 437, cited by the appellant, the court announced a view in harmony with its contention, saying:

"If he cannot read it, it is as much his duty to procure some reliable person to read and explain it to him, before he signs it, as it would be to read it before he signed it if he were able to do so; and his failure to obtain a reading and explanation of it is such gross negligence as will estop him from avoiding it on the ground that he was ignorant of its contents."

This view was modified in the *Kasischke* case, 104 Fed. 440, heretofore cited. The rule announced in the *Belliwith* case has been taken by other courts, perhaps by a majority, but usually in equity cases where the court was the trier of the facts. We do not feel inclined to adopt such a view as an inflexible rule where the circumstances of the case show, as they do here, that it would be taking dollars for cents. It is idle to speak of a written instrument as a contract when the circumstances tend to show, and the jury has found, that the mind of but one of the parties has acted upon the subject-matter of the contract.

It was not necessary to return the $138 before commencing the action. It should, however, have been credited upon the judgment. It was not intended as a gift, and did not operate as a settlement. *Bjorklund v. Seattle Elec. Co.,* 35 Wash. 439, 77 Pac. 727; *Sanford v. Royal Ins. Co.,* 11 Wash. 653, 40 Pac. 609.

The case will be remanded with directions to credit that amount upon the judgment. In all other respects, the judgment is affirmed. Neither party will recover costs.

CROW, C. J., ELLIS, MAIN, and CHADWICK, JJ., concur.