**TED PRICE CONSTRUCTION COMPANY, Appellant,**

v.

**CASCADE NATURAL GAS CORPORATION, a Washington Corporation; Fish Service Corporation, a Corporation, Appellees.**

No. 17384.

United States Court of Appeals Ninth Circuit.

Sept. 11, 1962.

Carl L. Loy and Kenneth C. Hawkins, Yakima, Wash., for appellant.

Jones, Grey, Kehoe, Hooper & Olsen, H. B. Jones, Jr., and John R. Tomlinson, Seattle, Wash., for appellees.

Before HAMLIN, KOELSCH and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge.

This is a diversity case. Appellant is a Texas corporation; appellees are corporations of Washington and Delaware. The complaint charges breaches of three construction contracts and demands $3,067,591 as damages. The breaches are denied, and, as affirmative defenses, two releases are set up.

The first release, dated September, 1956, purports to amend two of the contracts, so as to limit them to work done by appellant up to that time. It provides that appellant is to do no further work, is released from further obligations, and is to be paid $122,257.61 of which $101,257.61 is for work performed and $21,000 is "for any and all losses and damages heretofore or hereafter suffered or incurred by Contractor [Appellant] in any way connected with such work or by reason of this amendment to The Contracts". It embodies a full release by appellant of all claims under the contracts.

The second release, dated March 19, 1957, relates primarily to the third contract. In it, the parties acknowledge that all work required has been done and accepted, agree that $82,232.98 is due appellant and agree upon a mode of payment. Appellant released appellees, not only from all claims under the third contract, but also from all claims arising under "any other construction contracts (written or verbal), heretofore entered into" between the parties.

A motion for summary judgment, based upon these releases, was filed. In appellant's reply affidavits, the execution of the releases and payment of the agreed consideration is admitted, but it is charged that the releases were procured by fraud and duress ("business compulsion") on the part of appellant. Similar admissions and charges are made in a reply to the answer, filed pursuant

to order under Rule 7(a), F.R.Civ.P., 28 U.S.C.A.

Appellees then moved for an order staying proceedings "pending payment into court of the consideration paid by defendants [appellees] to plaintiff [appellant] for the releases * * *". This motion the court granted to the extent of the $21,000 paid under the first release. The order, made following denial of a motion to reconsider the court's ruling, was made November 10, 1960, and required that payment into the registry of the court be made by February 10, 1961 (later extended to February 17) with a further provision that if payment be not made, the action "shall be dismissed without prejudice". No payment was made, and the action was dismissed on February 21, 1961. From these orders the appeal is taken. We conclude that the orders must be reversed.

■ In this court, and in the trial court, the question was briefed without particular reference to the law of Washington, and was decided upon the basis of earlier decisions of this court applying "Federal" law. However, the contracts were made, and the releases were given, in Washington. The parties are now agreed—as we are—that the law of Washington controls under the decisions in Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 and Guaranty Trust Co. v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079.

■ Appellant argues that tender or payment into court of the consideration for a release is not required by the law of Washington as a condition to recovery or to further proceedings in an action in which the party seeks to set aside the release for fraud or duress, and to enforce the cause of action released. It asserts that appellees can be protected by crediting the payment upon any judgment recovered. Such appears to be the law of that state. The parties' research, and our own, discovers but three cases upon the point.

The leading case is Sanford v. Royal Insurance Co., 1895, 11 Wash. 653, 40 P.

609, an action to recover on certain fire insurance policies. Plaintiff, in consideration of $1.00 (recited) or $119.75 (actual) had given a release. He claimed fraud—misrepresentation as to the validity of the policies. Judgment was for the plaintiff, and on appeal, the court held that it is not necessary to pay back the consideration for a release "where the judgment sought will accomplish this result". It said: "In many of the cases so cited it is held to be sufficient that upon the trial the jury were permitted to give the defendant credit for the money paid at the time the release, so-called, was executed". Alternative grounds of decision were (a) that a tender would have been rejected and was therefore useless, and (b) that the moneys due under the policies were payable when the release was given, and hence payment of part of them was not sufficient consideration.

The next case is Bjorklund v. The Seattle Electric Company, 1904, 35 Wash. 439, 77 P. 727, an action for personal injuries. A release had been obtained by fraud, both as to the nature of plaintiff's injuries and defendant's intentions to take care of him, and as to the nature of the release itself. Plaintiff could not understand or read English, and thought he was signing a receipt. The consideration was $70, the verdict $2500, upon which the $70 was credited. There was no tender or payment into court. On appeal, the judgment was affirmed, the court saying: "Due credit was therefore given for the sum in respondent's hands, and, under the authorities, there was no necessity for its return before bringing this suit", (citing Sanford).

The third case is Miller v. Spokane International Railway Company, 1914, 82 Wash. 170, 143 P. 981, another action for personal injuries. A release was given for $138. Judgment was for $7500. No tender of the $138 was made. Plaintiff was led to believe that he was signing a receipt. Judgment for the plaintiff was modified, the court saying:

"It was not necessary to return the $138 before commencing the action. It should, however, have been credited upon

the judgment. It was not intended as a gift, and did not operate as a settlement", (citing Bjorklund and Sanford, supra).

Appellees say that these cases fall within two well recognized exceptions to what they say is the general rule that tender or payment into court is a condition precedent to suit, namely, (1) where the money sued for is admittedly due, but for the release, and is more than was paid for the release, so that there was no real consideration for the release and in any event the defendant is sure to be protected by the court's crediting his payment upon the judgment, and (2) where the fraud is in the *factum* (i. e., where the releasor is prevented from knowing the nature of the paper that he signs) rather than in the inducement (i. e., where the releasor knows the nature of the paper, but is induced to sign by fraud as to the facts upon which his decision is predicated).

It is true that, upon their facts, the cases can be so categorized, Sanford under the first and Bjorklund and Miller under the second "exception". But we must decline to follow appellees' contention, for several reasons.

1. It is by no means clear that either the asserted general rule or the asserted exceptions are so well recognized as appellees claim. See, generally, 76 C.J.S. Release § 37, pp. 663–8; 12 C.J.S. Cancellation of Instruments § 44, pp. 1003–1010; note, 134 A.L.R. 40.

2. Nothing in the three Washington cases suggests that they lay down any such exceptions to such a general rule; on the contrary, they appear to us to lay down their own general rule, and to follow it consistently.

3. The distinction between fraud in the *factum* and fraud in the inducement is purely historic, and arises out of the fact that law and equity were once separate jurisdictions. At law, fraud in the *factum* was said to make the release void, and it was therefore subject to attack in an action at law upon the released claim, and without prior restoration of the consideration. On the other hand,

a court of law would not hear a claim of fraud in the inducement, so that the releasor had to cross Westminster Hall and petition in equity to have the release cancelled. The chancellor held that the petitioner must first restore the consideration, else he might get a decree of cancellation and at the same time keep the money. There was no assurance that he could then recover at law, or that if he did, the consideration would, in such an action, be offset against the judgment. Law and equity have long been merged in Washington; they now are merged in the Federal courts. The court can pass upon the validity of the release and upon the validity of the cause of action, and, if it finds for plaintiff, offset the consideration against the judgment, all in one action. There is therefore no real reason for preserving the distinction urged by appellees.

Nor does the suggested rule appeal to our sense of fairness. There is an uncontradicted showing in the case at bar that appellant is in financial difficulties and cannot raise the $21,000. It does not sit well with us to say to appellant, "you may be able to prove that you were defrauded, that you are entitled to recover the entire $3,067,591 that you claim, and that, by reason of appellees' fraud you bargained your claim away for $21,000, but we will not let you until you have paid up the $21,000, whether you are able to do so or not". This smacks too much of the famous saying of Anatole France: "The law, in its magnificent equality, forbids the rich as well as the poor to sleep under bridges, to beg in the streets, and to steal bread".

Nor can appellees claim that they are being unduly harassed, assuming the validity of the releases. That issue can be tried separately, and tried first, and if the court finds in appellees' favor, that will be the end of the matter. (Rule 42(b), F.R.Civ.P.)

The decisions of this court on which appellees (and the trial court) rely (Hill v. Northern Pac. Ry. Co., 1902, 9 Cir., 113 F. 914; Price v. Connors, 1906, 9 Cir., 146 F. 503; Mahr v. Union Pac. R.

Co., 1909, 9 Cir., 170 F. 699; Miles v. Lavender, 1926, 9 Cir., 10 F.2d 450 (dictum); Pacific Greyhound Lines v. Zane, 1947, 9 Cir., 160 F.2d 731) are not in point. The first three cases apply "Federal" law; all were decided before Erie, supra. They are based upon the old separation of law and equity, which still prevailed in a somewhat hermaphroditic form in the Federal courts. They do not purport to apply Washington law. Judge Neterer, who was himself a Washington lawyer, has twice pointed out, citing the Washington cases upon which we now rely, that Washington law is to the contrary. (Johnson v. Chicago, M. & St. P. Ry. Co., W.D.Wash., 1915, 224 F. 196; Thornton v. Puget Sound Power Co., W.D.Wash., 1930, 49 F.2d 347). Miles deals with Arizona law, Pacific Greyhound with that of California.

We do not doubt that the Washington Court would follow its earlier decisions today. Comparatively recent cases indicate that the rules announced in Sanford, Bjorklund and Miller, supra, are good law, applicable to rescission cases generally. For example, Cain v. Norman, 1926, 140 Wash. 31, 248 P. 71, was an action to rescind a contract to buy a business. It was contended that plaintiff buyer should have returned the moneys he received while operating the business. To this the court replied:

> "In Sanford v. Royal Ins. Co., 11 Wash. 653, 40 P. 609, we held that in suits in equity, where a bill is filed for a rescission, a restoration of the consideration received is not necessary before suit; it being sufficient that such restoration be provided for in the decree."

After indicating that this is a general principle in the law of Washington, the court continued:

> "If, in the final adjudication, the equities of the parties can be protected, failure to make formal tenders is not fatal to the proceeding".

The orders appealed from are reversed.