7    335;
d30   269
30   270

JEANNETTE ECCLES, and Another, Respondents,
v. UNION PACIFIC RAILWAY COMPANY, Appel-
LANT.

RELEASE.—MISTAKE.—EVIDENCE.—Plaintiff having been injured in
a railway accident, eleven days after the accident occurred
signed a release of all her claims, and before the time of sign-
ing the release was informed by the appellant's physician that
no danger was apprehended and no fraud or concealment of
any kind was practiced and only a mistake was claimed, and
that at the time she signed, she hesitated, fearing a miscar-
riage, but finally executed the release under the advice of her
husband and his father; held, in an action for damages on
account of a miscarriage happening nineteen days after the
signing of the release, that a verdict for the plaintiff was
unsupported by the evidence.

APPEAL from a judgment of the district court of the
first district and from an order refusing a new trial.
The opinion states the facts.

Mr. Parley L. Williams and Mr. Waldemar Van Cott,
for the appellant.

Mr. C. B. Pash and Mr. T. D. Johnson, for the
respondents.

ANDERSON, J.:

The plaintiffs and their infant son, Stewart Eccles, were
passengers on a train on the defendant's road, and were
injured by an accident to the train on the 30th day of
January, 1890, alleged to have been caused by the
negligence of the defendant, and this action is to recover
damages for the injuries sustained. The defendant
pleaded a settlement and release, and this was the defense

relied on at the trial in the court below. Plaintiffs obtained a verdict and judgment, and the defendant brings this appeal.

The ground relied on for reversal is that the verdict of the jury is not supported by the evidence. At the time of the accident, Jeannette Eccles, who is the wife of her co-plaintiff, Samuel H. Eccles, was advanced about seven months in pregnancy. The settlement was made and the release executed on the 11th day of February, 1890, and on the 1st day of March following, Jeannette Eccles gave birth to an eight-months child. Plaintiffs claim that they settled with the defendant under a mistaken belief, induced by the statement of Dr. Perkins, a physician in the employment of the defendant, as to the extent of the injuries to Jeannette Eccles; that she feared a miscarriage, and was not willing to settle, until it should be known there was no danger of such a result, but that, upon the assurance of Dr. Perkins that there was no danger of that kind to be apprehended, she was induced to settle, and that she did not understand the release to include her entire claim for damages in case her injuries should cause her to give premature birth to her child. The release by its terms includes all claims and demands of the plaintiffs for the injuries sued for in this action, and there is no claim of fraud in procuring its execution by plaintiff, but it is sought to be avoided, on the ground of mistake, as to the extent of the injuries to Jeannette Eccles at the time of its execution. There is no dispute in the evidence as to the material facts, and the sole question for our determination is whether the verdict is supported by the evidence.

The accident occurred between Aspen, Wyo., and Ogden, Utah, on the evening of January 30, 1890, and the train reached Ogden about four o'clock A. M. of January 31st. Jeannette Eccles testified that she saw Dr.

Perkins, the defendant's physician, when she arrived at Ogden, and that he told her to "go home and lay still," and that he would call later in the day; that about noon he called, and found her sitting up, when he said, ",Oh, I see there is nothing wrong with you at all; if there had been anything wrong with you, it would have happened before this; if you were hurt, your child would have been born at once, or else to-day;" that about twenty-hours had intervened from the time of the accident until the doctor called, and that she never saw him afterwards. One E. J. Fisher was the claim agent of the defendant company, with whom the settlement was made. The plaintiff Jeannette Eccles testified as follows: "My husband went to see Mr. Fisher to settle. Mr. Fisher sent for him. My husband went three or four times to see Mr. Fisher, and when he returned home he told me about it. I told my husband I thought he had better wait awhile, and see how I got along before he settled. The night before I signed the release my husband told me about the definite agreement he had made with Mr. Fisher regarding the settlement. I heard about the definite agreement going to be made before that, and the next day Mr. Fisher came with the release. My father-in-law, William Eccles, my husband, my mother-in-law, Mrs. Sarah Eccles, and a young man by the name of Wall, were in the room besides myself. * * * When Mr. Fisher came in he said he had come to settle with us, and wanted to know what I thought about it. I told him I didn't want to settle; that I had rather wait to see how I got long. And he said: 'I am satisfied you are all right, by Dr. Perkins' statement. He is a well-learned man, and he would not say there was not anything wrong with you, if there was, and you might as well sign the release, for you won't get any more. You

are all right, and you might as well sign it, and have it done with.' I insisted on waiting, but he said that Dr. Perkins said there was nothing wrong with me, or it would have happened before. I do not think of much else that was said while he was there."

She further testified that she "did not read the release, but it was read aloud by Mr. Fisher;" that she listened to it as much as she could, but was suffering with nervous headache at the time; that the night before she signed the release her husband had told her the amount he had settled for, and that the persons who insisted on her signing the release were her husband and her father-in-law; and that the relations between herself and husband were pleasant. She also testified that Dr. Allan, a regular practicing physician of Ogden, had attended her from the time of the injury until the release was signed, and had made an examination of her person to see how seriously she was injured, and that he visited her the day before she signed the release; and that her mother-in-law, who was the mother of a large family, and experienced in nursing, was her nurse. She further testified that she thought she was settling only for the injury to her child, Stewart, and for her husband's loss of time. Samuel H. Eccles, the husband, and one of the plaintiffs, testified that, when Fisher came to his house to settle, he signed; but that his wife declined to sign the release, and said she "didn't know what might happen yet, and she would sooner wait a while;" that Fisher was there about an hour, and that Fisher and he and his father told her she might as well sign. He also testified that Fisher read the release aloud before any one signed; that he "understood the agreement before signing it, just as it is;" that he did nothing more than advise his wife to sign the release, and that no one did

more than that, and that his father also advised her to sign it.

We think the foregoing testimony of the plaintiffs, together with more of a similar character, clearly establishes that, in making the settlement and executing the release, the possibility that Mrs. Eccles might give premature birth to her child was taken into the account, and was understood by both parties to be covered by the release. Dr. Perkins' statement, made in less that twenty-four hours after the injury, could not have been understood by her, eleven days after the accident, as the statement of an absolute fact on which she should rely in settling, but merely as the expression of an opinion as to the probable results of her injuries. Besides that, she had a physician of her own in constant attendance, with whom she could and doubtless did, consult as to the probable effect of her injuries. No fraud is claimed to have been practiced by the defendant in making the settlement. The husband, who executed the release at the same time, understood the release according to its terms, and advised Mrs. Eccles, as did the other members of the family, to sign it. It does not appear that any element of damages was omitted from consideration, nor that any fact was misstated by defendant in order to procure her signature, nor that any fact was misunderstood by her, or that undue influence was exercised to induce her to settle. She was advised, through her husband, before she talked with Fisher, of the state of the negotiations for settlement and of the amount and of the terms of settlement; but hesitated about settling for the sole reason that, notwithstanding Dr. Perkins' statement as to the probabilities of a miscarriage, she feared such a result might happen; but, notwithstanding such doubts, she settled, and signed the release, and we think she is bound by it,

and the verdict of the jury was wholly wanting in evidence to support it. The cause is therefore reversed and remanded, and a new trial ordered.

ZANE, C. J., and BLACKBURN, J., concurred.