## ·COKE v. TIMBY.

No. 3468.   Decided September 25, 1920.   (192 Pac. 624.)

1. NEGLIGENCE—AUTO DRIVER'S NEGLIGENCE AND PEDESTRIAN'S CONTRIBUTORY NEGLIGENCE HELD JURY QUESTIONS.   In an action against an automobile owner for injuries to one waiting to board a street car, into whom he backed, questions of defendant's negligence and plaintiff's contributory negligence *held* for the jury.

2. DAMAGES—$4,200 IN FAVOR OF PEDESTRIAN AGAINST AUTOMOBILIST FOR CRIPPLING INJURIES NOT EXCESSIVE.   Verdict for $4,200 in favor of seventy-seven year old woman against automobile owner, who injured her, she having expended in two years nearly $1,500 for nursing, medicine, and doctor's bills, and having been so crippled she was unable to walk, and could move around only on crutches, *held* not so excessive as to indicate passion and prejudice.

3. TRIAL—VERDICT FOR INJURIES NOT INVALIDATED BY EVIDENCE NOT OBJECTED TO AS TO DEFENDANT'S INSURANCE.   In attacking verdict against him as excessive, defendant automobile owner cannot rely on the contention that the jury was influenced by testimony admitted without objection that there was an insurance policy which might or might not protect him.

4. APPEAL AND ERROR—IN PERSONAL INJURY CASE QUESTION TO WITNESS ON CROSS-EXAMINATION RELATIVE TO INSURANCE HELD HARMLESS.   In an action against an automobile owner for injuries to an aged pedestrian, defendant cannot complain of the question asked him on cross-examination, to which objection was sustained as immaterial.   "You knew you could get the extent of her injury and damages under that insurance policy up to a certain amount?"

5. RELEASE—RELEASE OBTAINED BY FRAUD NOT BAR TO ˙ACTION.   Where defendant automobile owner, who had injured plaintiff pedestrian, an aged woman, secured her signature to her release for $200 by representing that it was merely a receipt for moneys procured from his insurer, plaintiff was not bound by the release, and could maintain action for her injuries.[1]

[1] *Eccles et al.* v. *Union Pacific Ry.* Co., 7 Utah, 335, 26 Pac. 924, *Anderson* v. *Oregon Short Line Co.*, 47 Utah, 614, 155 Pac. 416.

6. RELEASE—RIGHT TO AVOID FRAUDULENT RELEASE NOT LOST BY FAILURE TO RETURN CONSIDERATION. In personal injury action, plaintiff was not precluded from setting up fraud in defendant's obtaining a release from her by the fact that the court did not require plaintiff to leave with the clerk the consideration of $200 paid by defendant to plaintiff for the release, which money was tendered to defendant in open court and by him refused, since it was not necessary to return the money.

7. APPEAL AND ERROR—PRESUMPTION JURY FOLLOWED INSTRUCTIONS AND ALLOWED DAMAGES WITHOUT DEDUCTION OF AMOUNT PAID FOR RELEASE. Where the $200 given defendant by plaintiff for a release procured by false representations was tendered by plaintiff to defendant in court, and the tender was refused by defendant, in the absence of anything to indicate the matter of tender was considered by the jury, the presumption is that it followed the instructions and allowed plaintiff such damages as she suffered in their judgment without deduction.

8. TENDER—DEFENDANT CAST FOR DAMAGES ENTITLED TO TENDERED CONSIDERATION FOR FRADULENTLY PROCURED RELEASE OR TO CREDIT THEREFOR. Though plaintiff, suing for injuries, was not required to tender back the $200 received by her from defendant for a release fraudulently procured before bringing suit, where she did make the tender, and presumptively was awarded full compensation by the jury, defendant is entitled either to the $200 paid into court or to a credit for the amount.

9. APPEAL AND ERROR—FAILURE AT TRIAL TO DEDUCT FROM RECOVERY CONSIDERATION FOR FRAUDULENT RELEASE NOT REVERSIBLE ERROR. That a deduction on account of money paid into court, being the consideration paid by him for a fraudulently procured release from plaintiff, was not made in defendant's favor by the jury, nor by the trial court, does not constitute reversible error, nor deprive defendant of his rights in the premises, as the money may be paid defendant after his appeal, or may be deducted from the judgment against him.

10. APPEAL AND ERROR—COURT ENTITLED TO HAVE ERRONEOUS PART OF INSTRUCTION POINTED OUT. The trial court was entitled to have pointed out to it the particular part of a sixteen-line instruction claimed to be erroneous before exception can be considered.

Appeal from District Court, Third District, Salt Lake County; *Wilson McCarthy*, Judge.

Action by Mary D. Coke against F. A. Timby. From a judgment for plaintiff, defendant appeals.

MODIFIED and AFFIRMED.

*Soule & Spalding,* of Salt Lake City, for appellant.

*Olson & Lewis,* of Salt Lake City, for respondent.

CALL, District Judge.

The plaintiff filed her complaint in the district court of Salt Lake county, by which she seeks to recover damages alleged to have been sustained by reason of the defendant's negligence. She alleged that on December 16, 1917, she was standing on the north side of First South street, near the corner of Fourth East street, in Salt Lake City, waiting to board a street car; that the defendant owned and operated an automobile, which at said time stood near the curb on the north side of said street, a short distance eastwardly from where she was standing; and that he negligently moved his automobile backward toward the plaintiff, without warning and without affording her an opportunity to escape being struck, and by reason thereof she suffered the injury complained of.

The defendant's answer denied negligence and pleads two defenses: (1) Contributory negligence, alleging that at the time and place of the injury complained of the plaintiff, knowing that the defendant was about to back his automobile, so that he might move away from the curb and pass on down the street, negligently and carelessly and without the exercise of due diligence on her part walked into the street immediately and directly behind his automobile, and that he, not knowing of her presence there, with the exercise of reasonable care and precaution was not able to discover her presence in said place, and that he, in the exercise of due care and diligence on his part, moved the automobile slowly backward

for a distance of about six feet, when it came in contact with the plaintiff: (2) settlement, alleging that the plaintiff, after she had sustained the injury complained of, accepted $200, and executed a release in full satisfaction and liquidation and discharge of her claim for damages.

To the last defense plaintiff replied that, if she executed a release in full satisfaction of her demands and claims, such release was obtained by fraud on the part of the defendant, and is void. She admits that $200 was paid, $125 to her granddaughter and $75 to her physician, to meet part of the medical expenses incurred and nurse hire; that the defendant called on her on January 16, 1918, while she was confined to her bed, suffering from the injuries and under the influence of drugs, and represented to her and her attendant that he was procuring a receipt for money for plaintiff's nurse and medical expenses; that she was unable to read, and, relying upon said representations of defendant, she signed same.

The case was tried by a jury, and resulted in a verdict for plaintiff, from which defendant appealed.

The first assignment of error relied upon is the refusal of the court to grant defendant's motion for a nonsuit. The accident occurred on Sunday morning, in front of the Congregational Church, at the close of service, which had been attended by some 700 or 800 people, among whom were the parties to this action. The plaintiff was seventy-seven years of age, and on leaving church continued north across the street car tracks to take the westbound car for her home. The defendant had his automobile parked against the curb on the north side of the street. The plaintiff paused on the west side of the defendant's one-seated electric automobile, which had its top partly lowered, and conversed for a few minutes with Mrs. Timby, who was sitting beside the defendant. When ready to leave, the defendant testified he said, "We will have to go home," and that Mrs. Coke then said, "I must be going, too." She then stepped back to take her car. Defendant further testified that there might have been a dozen people standing there waiting for the car, and if he had turned around and looked before he sat down he

could have seen the plaintiff; but he did not do so, saying:

"I simply sat down, looked to the side of the car, and started to back, and within six feet the plaintiff was struck."

Mrs. Coke had stopped to permit a westbound automobile to pass her. This point was only a few feet from the place where cars stop to take on passengers. Mrs. Coke testified:

"I started across the street to the street car track, and the auto came along, and I stopped to let it pass, because I knew the street car would stop long enough for me to get there, for the purpose of getting on, and while I stood there Mr. Timby started to move back. There were other people by the track, ten or fifteen feet away. The auto was standing still as I left to walk over to the track."

Considering the street, with the traffic thereon, the time of day, the many people who were accustomed to attend the church and to take the street car at the point of the accident, the familiarity of the defendant with all these things, and his knowledge that the plaintiff was near his automobile, a regular stopping place on a street car line, to take the car for her home, we are not prepared to declare as a matter of law that the defendant was not guilty of negligence; neither are we prepared to say that the plaintiff was guilty of contributory negligence. We think the question was one for a jury, and there was no error in refusing to grant the motion for a nonsuit. For the same reason the court did not err in refusing to grant the defendant's motion for a new trial.

The contention made in connection with the motion that the verdict of $4,200 rendered is excessive, and was given under the influence of passion and prejudice, cannot be sustained. The record shows that the plaintiff in two years expended nearly $1,500 for nursing, medicine, and doctor's bills, and was so crippled that she is still unable to walk, and can only move around on crutches. There is no suggestion made by appellant as to the amount that would not be excessive. A few years ago such a sum might not have been awarded by a jury, but in this day of high prices the amount awarded cannot be said to be excessive; nor does the contention that the jury

was influenced by the testimony (all of which was admitted without objection) that there was an insurance policy, which might or might not protect the defendant, meet with any favor.

The defendant testified as to conversations had with Mrs. Rowan and the plaintiff at the time the alleged release was executed, saying, among other things, that he had examined the insurance policy and found that he could get Mrs. Coke $200. On cross-examination of defendant, the court sustained an objection as immaterial to the question:

"You knew you could get the extent of her injury and damages under that insurance policy, up to a certain amount?"

Whether the objection was well taken is not before this court, but from all the record we do not think the appellant can complain of the question asked.

The appellant complained that the court erred in its refusal to direct the jury to bring in a verdict in favor of defendant. The foundation for a peremptory instruction is claimed by appellant to be the alleged release and settlement of claim which plaintiff made. The record is that Mr. Timby testified:

"I went to the place of business of Mrs. Rowan, she having received the checks that I had given prior to this in payment of nurse hire, and asked her if she would be good enough to go over with me to see Mrs. Coke; that I had been looking up my insurance policy, and I found that I could get her $200 in settlement of her claim; and she said she was rather busy and she couldn't very well come at that time, saying: 'You go over, and take it over to her, and explain it, and it will be all right,' I then went over to Mrs. Coke's room, went into the room and told her the same; in fact, the same words as I had with Mrs. Rowan. She said, 'That is nice.' She got her glasses, read it, and said, 'It looks all right,' and signed it; told me to give any check that I had to Mrs. Rowan, which I did, and Mrs. Rowan read it over and at my request witnessed her signature."

Zina Stringham testified:

"I was present at the time Mr. Timby secured the signature from Mrs. Coke. Mrs. Coke was very sick, lying on her back. During the previous evening morphine had been administered, and during the day of the signing codeine had been given every three hours. She was in bed; it was terrible when they moved

her, could not sit up; we had to have pillows on each side of her, so that the quilts could not touch her limbs; she was very weak. Mr. Timby said he found out that he had some insurance on his car, and, if Mrs. Coke would sign this receipt, that he would get $200. She asked me to get a pen, and Mr. Timby handed his pen, and I gave her a magazine, and she signed it while lying on her back. She did not read it, nor did Mr. Timby read it to her. He did not say one word about claim, nor about the settlement of a claim. I am certain about the use of the word 'receipt.' Mrs. Coke did not have her glasses when she signed the receipt."

Mrs. Ruby L. Rowan testified:

"Mr. Timby came to my studio, and said, 'Ruby, I have got some good news.' I said, 'That is fine; what is it' He said, 'I find that I can get a little money on my automobile insurance; when are you going over to your grandmother's?' I told him I could not leave my china kiln then, but would go over about 5 o'clock. He said he was going over, as he had a receipt for her to sign. Then he could get the money. About fifteen minutes later he returned, took the paper from his pocket, and said, 'I have been over and she signed this receipt; will you put your signature to it?' and I said, 'Yes;' which I did. My husband spoke up and said, 'What are you signing?' Mr. Timby said, 'She is signing a receipt for part of the insurance money;' also said, before leaving he was in a hurry to get the letter off, for fear the insurance company would change its mind, and that was the reason he went over to grandmother's to get it signed."

Mrs. Coke testified that Mr. Timby said that the document was a receipt, and if she would sign it he could get some money. He did not tell her it was in settlement of her claim.

"I had made no claim, nor thought of one. I knew he had been advancing some money. I did not read it, nor did any one read it to me. It was just folded and placed there by Mr. Timby for me to put my signature to. I had confidence in him."

Appellant relies upon the cases of *Eccles et al.* v. *Union Pacific Ry. Co.*, 7 Utah, 335, 26 Pac. 924, and *Anderson* v. *Oregon Short Line Co.*, 47 Utah, 614, 155 Pac. 416, to sustain his contention.

In both cases the defense set up was mistake of fact as to the extent of the injuries sustained. No claim of fraud is made and they do not in any way sustain appellant's contention in the case.

Stress is laid upon the fact that the court did not require the plaintiff to leave with the clerk the $200 paid by the defendant to plaintiff for the so-called release and settlement of her claim, which money was tendered to the defendant in open court and by him refused. In the case of *Miller* v. *Spokane Int. Ry. Co.*, 82 Wash. 170, 143 Pac. 981, the third defense was ''that the damages had been settled by the payment, acceptance, and retention of $138.'' The respondent replied that he was a foreigner, unable to read or write English, and that, if he had signed the release, he did not know what he was signing. The court held it was not necessary to return the $138 before commencing the action. It, however, should have been credited upon the judgment. It was not intended as a gift, and did not operate as a settlement. *Bjorklund* v. *Seattle Electric Co.*, 35 Wash. 439, 77 Pac. 727, 1 Ann. Cas. 443.

In this case the $200 was tendered by the plaintiff to the defendant in court, and the tender was refused by the defendant. There is nothing in the record to indicate that the matter of tender was considered by the jury at all. In view of that fact, the presumption is that the jury followed the instructions of the court, and allowed the plaintiff such damages as in their judgment she suffered, in view of all the facts and circumstances, without any deductions.

While it is true that the plaintiff was not required to tender back the $200 received by her before bringing suit, yet it is also true that, in view that she did make the tender, and in view that presumptively she was awarded full compensation by the jury in their verdict, the defendant is entitled to the $200 paid into court for his benefit, or to credit for that amount upon the judgment rendered against him on the verdict. The mere fact, however, that the deduction was not made by the jury, nor by the trial court, does not constitute reversible error on the one hand, nor does it deprive the defendant of his rights in the premises upon the other. The money tendered may as well be paid to the defendant now, or it may be deducted from the judgment

when it is paid.    That may, however, be done without
prejudice to any one.

Complaint is made of part of instruction No. 13.    In ap-
pellant's brief and in his oral argument he contends that
the following constitutes error, to wit:

"It is for you to determine what in your judgment constitute
reasonable and ordinary care on the part of the defendant while
backing the automobile at the time of the accident."

The exception taken at the trial is:

"The defendant excepts to the court's instruction No. 13, given
by the court, and especially that part with reference to a casual
glance ahead in driving an automobile may be reasonable and or-
dinary care under some circumstances, while under other circum-
stances unceasing vigilance and watchfulness on the part of the
driver is necessary."

It is not contended that this instruction, which covers some
sixteen lines, is wholly bad, nor that the part which is pointed
out in the exception is bad, and while the part complained
of, and to which no exception was taken, is unhappily
worded, yet the jury, in face of all the charge, was not misled
in the least.

The trial court was entitled to have pointed out to it the
particular part of instruction No. 13 which it was
claimed was error before this exception can be
considered.

Complaint is made of the court's refusal to give two cer-
tain instructions touching the alleged releases of damages.
There is no merit in this contention.    The court's instructions
are ample on this and all other points.

In view of what has been said, it follows that the judgment
should be and it accordingly is affirmed, with the modifica-
tion, however, that the defendant be paid the $200 tendered
in court, without interest, or that he be credited with that
amount on the judgment as of the day the judgment was
rendered.    Costs on appeal to be taxed against appellant.

CORFMAN, C. J., and FRICK, GIDEON, and THUR-
MAN, JJ., concur.

WEBER, J., being disqualified, did not participate.