## PROVIDENT LIFE & ACCIDENT INS. CO. v. BERTMAN.

### No. 9965.

Circuit Court of Appeals, Sixth Circuit.

Dec. 3, 1945.

Thos. V. Koykka, of Cleveland, Ohio (Thos. V. Koykka, Smith Warder, and McKeehan, Merrick, Arter & Stewart, all of Cleveland, Ohio, on the brief), for appellant.

Edward I. Siegel, of Cleveland, Ohio (Siegel & Siegel, of Cleveland, Ohio, on the brief), for appellee.

Before HICKS and MARTIN, Circuit Judges, and RAYMOND, District Judge.

HICKS, Circuit Judge.

Appellee, Bertman, brought suit against appellant, Provident Life and Accident Insurance Company (herein called Provident), to set aside a purported settlement of a claim under an insurance policy issued by Provident, and to recover a balance alleged to be lawfully due him for accidental injuries. In the course of the trial the jury was waived by consent and the action was tried by the court.

The court filed findings of fact and conclusions of law and found that the settlement was obtained through fraudulent representations of Provident's adjuster, Alley, in cooperation with its physician, set aside the settlement and the release executed by Bertman, as void and of no effect, and granted a recovery of $2563.36.

The principal questions here, are (1) whether there was substantial evidence to sustain the findings of fraud; and (2) whether the judgment should have been for a smaller amount.

On May 6, 1939, Bertman sustained an injury when he struck the top of his head on a low ceiling while making a delivery for the Bertman Pickle Company, of which he was president. He became sick at his stomach and later that evening keeled over and was taken to the Mt. Sinai Hospital. He suffered severe headaches and Dr. Baumoel, a neurologist, testified that he performed a cerebroscopy and that for the first year after the injury he saw appellee about once a week.

In June Alley called to see Bertman but found him away. On July 22nd, Dr. Pomerantz, employed by appellant, made an examination of Bertman, at Alley's request, and mailed his report to Alley. The doctor reported that Bertman " * * * still complains of headaches which he states are daily occurrences and because of which, and the dizziness which sometimes occurs, he does not drive his car." He reported that the hospital records showed that he was admitted May 7th and discharged on May 30th with a final diagnosis of cerebral concussion; that Bertman's chief complaint now is a headache which comes on late in the afternoon which is not relieved by any sedative. He reported further that:

"There is no question in my mind but that this man has been back to work. All he is willing to admit is that he comes down to the office . . . because his wife had been kicked by a horse and he had to open up the business.

"We talked to him regarding a settlement of his claim and he told us that he could not settle the claim until he had gone back to work. When we pointed out to him that as far as we were concerned, he had already returned to work since we had to call on him at his place of business, he told us he would settle the claim at a time when he was discharged by his doctor. We took the liberty to contact Dr. Baumoel who informed us that although this man did have a concussion of the brain and though the headaches still persist * * * he could see no reason why this man did not return to work."

Appellee testified that Dr. Pomerantz made a very superficial examination of him and advised him to go to his place of busi-

ness for two or three hours a day and that would clear up the headaches.

Alley had Dr. Pomerantz's report when he finally got in touch with appellee on July 25, 1939. On this occasion Alley drew upon appellant in favor of appellee for $946.66 for medical expenses, for approximately three months of total disability, approximately three months of partial disability, and for hospital expenses, and the draft was paid. On its face it bore the notation:

"Endorsement on back hereof by Payee shall constitute a receipt and release in full settlement of any and all claims which Payee has or may have under policy RJM 50742 by reason of injuries occurring or beginning on or about the 6 of May 1939 and Payee thereby releases and discharges the Drawee from further liability for said claims or any loss."

On the same occasion, appellee, although he did not remember it, signed the following release, to wit:

"I now accept the sum of *Nine Hundred Forty Six and 66/100 Dollars ($946.66)* in full and final settlement of any indemnity or benefits under Policy No. R J M 50742 by reason of disability or loss from (injuries received) on or about the *6* of *May 1939* and I do hereby release and discharge the Provident Life and Accident Insurance Company, Chattanooga, Tennessee, from any further indemnity for said disability and from any suits or demands whatsoever.

"And I also release and discharge said Company from any and all further indemnity or benefits for disability or loss resulting directly or indirectly from said (injuries).

"This the *25* day of *July 1939.*

"Witness ........ Joseph Bertman."

With reference to this draft and release, appellee testified:

"I was under the impression from what Mr. Alley told me that I was just signing my check for receiving this money for the time that I was injured and that after that if I did not clear up I would still have my policy of insurance and that I could still go back at the Company."

On cross-examination he repeated this statement, in substance, and said that when he received the draft and signed the release, he did not realize that he was releasing and settling his claims against the Company; that he did not realize this until his policy was cancelled. He testified that on August 5th an agent of appellant (not Alley) asked him to bring his policy in and explained that since there was a disability clause in it and since he had a disability he did not have to pay premiums, and that the agent returned the renewal premium which had been paid in July; whereupon he surrendered the policy and received a receipt therefor.

A few paragraphs from Alley's report of the settlement written to Provident on July 26, 1939, are revealing:

"When I was in Cleveland last month this claimant was in Cambridge Springs, Pa." (On the advice of his physician appellee had gone to Cambridge Springs for a complete rest.) "I contacted his wife and she informed me that he was in bad shape and had not been able to do any work. The Retail Credit report has indicated that he had been down to his place of business, but had not been able to do any work. Dr. Pomerantz in his report indicated that this man was willing to terminate his total disability as of August 1st, and he assisted me a great deal in connection with getting the man to commit himself on this basis, because I find now when I get back to Cleveland, that the man is leaving for Youngstown today, July 26th, for an indefinite period of rest, and that his total disability may run a considerable length of time beyond August 1st, and the partial disability will undoubtedly be claimed for the full limit of the policy.

"I thought it high time to make best disposition of it, and the claim has been settled for 85 days total disability * * * $566.66 * * * 90 days of partial disability * * * $300.00 and 24 days hospitalization * * * $80.00 or a total of $946.66. * * *

"I trust you are entirely satisfied with the adjustment I have made on the claim, as it is about all I could do under the circumstances, and thought it was about the best way to get out of it while I had an opportunity."

■ Appellant contends that this communication was privileged. We do not think so. Alley, who prepared it, certainly should have been questioned about it since one of the issues was whether his conduct was fraudulent.

The District Court found as a fact:

"2. The plaintiff was seriously injured on the 6th of May, 1939 which resulted in *total disability for a period of approxi-*

*mately 3 months* to August 1, 1939 *and had been partially disabled* to December 18, 1940 making *a total partial disability of 16 months to December 18, 1940, and was totally disabled thereafter and to date of filing of the petition, namely, July 31, 1941."* (Italics ours.)

We are not at liberty to disregard this finding. It was not clearly erroneous and was based upon the testimony of witnesses whose credibility was to be determined by the trial court. Rule 52 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The record indicates that this finding was first proposed by appellee himself.

Without quoting additional material findings of the court, they were, in substance, that appellee was not aware of the seriousness of his injury, but that appellant was aware of it, and used both its doctor and its adjuster to persuade appellee to commit himself to the settlement made on July 25, 1939, and that upon being advised by Alley that the settlement had been made, the appellant immediately set about to have appellee's policy cancelled in order that it might be released from further liability on its contract. These findings are not clearly erroneous and are based upon substantial testimony.

There is a clear inference that appellant's agents were hurriedly engaged in effecting a settlement with appellee and a cancellation of his policy at a time when he was totally disabled from brain concussion and was suffering recurring and exacerbating headaches which might reasonably continue for an indefinite yet lengthy period.

Appellant contends that any misrepresentations of Alley were of opinion only and were not sufficient to destroy the release, citing the cases of Aetna Ins. Co. v. Reed, 33 Ohio St. 283; Gould v. Gerkin, 28 Ohio App. 309, 162 N.E. 701; Citizens Banking & Savings Co. v. Spitzer, Rorich & Co., 65 Ohio App. 309, 29 N.E.2d 892, and others. We do not think that these cases are binding upon us here. In each of them the parties dealt with each other at arm's length or their situation was such that they could be expected so to deal.

Appellant also contends that the appellee cannot question the settlement since he did not return the consideration paid to him. An exception to this rule is made in Ohio when the money received by the party was due him in any event and if returned could be recovered. Restatement of the Law of Contracts, Sec. 480(2) (c). Manhattan v Burke, 69 Ohio St. 294, 70 N.E. 74, 100 Am.St.Rep. 666. This is the case here, since appellee's contention was that the settlement was made for less than the amount due him under the policy.

The court in Finding No. 8 stated "There is ample ground for believing that he, the plaintiff, was not in a physical or mental condition adequate to understand the requirements for an early repudiation of his settlement."

This is a conclusive answer to appellant's contention that appellee ratified the settlement some two weeks later at the time of the surrender of the policy.

Appellant urges that because of his delay in challenging the settlement, appellee is estopped to question it now. We cannot agree. Although the amended petition carried a prayer that the settlement be declared void, there was no prayer to have the transaction rescinded. Appellee's suit was in effect, a simple common law action for damages for fraud and deceit and was so treated both by the parties and the court. It is clear enough that wherever a party is guilty of a fraud, and injury results as the immediate consequence to a person on whom the fraud was practiced, an action will lie for the resultant damages.

He was limited only by the appropriate statute of limitations and was under no obligation precipitately to challenge a void release as a prerequisite to his suit for fraud and deceit. Williston on Contracts, rev.ed., Vol. 5, Sec. 1526, p. 4274. In Gwinther v. Gerding, 40 Tenn. 197, the court said:

"The fraud vitiates the contract and the injured party may elect to treat the deed or contract as a nullity, and resort to an action on the case for deceit."

Appellant's insistence that appellee did not give prompt notice of the accident within the terms required by the policy cannot be treated seriously. The accident occurred on May 6, 1939; appellee gave written notice on June 13, 1939, which was more than the twenty days specified for such notice in Sec. 4 of Part 12 of the policy. However, Sec. 5 thereof stated that "Failure to give notice within the time provided in this policy shall not invalidate any claim if it shall be shown not to have been reasonably possible to give such notice and

that notice was given as soon as was reasonably possible." Under the facts of this case, we think that the short delay in giving notice was excusable.

■ Appellant claims that no proof of loss under the policy was supplied and that appellant was not supplied with periodic medical statements required by the policy. We think appellant is in no position to complain of these omissions in the light of the manner in which the settlement and the return of the policy were secured.

■ Finally, appellant urges that all other questions to one side, the judgment cannot exceed $253.34. This contention is based upon the terms of the policy which both parties rightfully assume must indicate the measure of damages. Part 3 of the policy headed "Monthly Accident Indemnity" reads as follows:

"(a) Or, if 'such injuries' shall, within seven days from the date of accident, wholly and *continuously* disable and prevent the Insured from performing any and every kind of duty pertaining to his occupation, the Company will pay monthly accident indemnity at the rate provided in Part 1, for the period of such *continuous* total disability, but not exceeding twelve *consecutive* months. After the payment of monthly indemnity for twelve months as aforesaid, the Company will *continue* monthly indemnity of the same amount thereafter for a period not exceeding thirty six *consecutive* months during which period the Insured shall be wholly and *continuously* disabled by 'such injuries' from engaging in any occupation or employment for wage or profit. * * *

"(b) Or, if 'such injuries' shall, within seven days from the date of the accident or *immediately following a period of total disability* covered under (a) of this Part, *continuously disable* and prevent the Insured from performing one or more important daily duties pertaining to his occupation, the Company will pay for the period of such disability, *but not exceeding six consecutive months,* a monthly indemnity of one-half of the amount payable for total disability. * * *" (Italics ours.)

The court found that there was due and owing to appellee indemnity at the rate of $200 per month for total disability for three months commencing May 6, 1939, to August 1, 1939, thereafter indemnity for partial disability at $100 per month for sixteen months from August 1, 1939, to December 18, 1940, and indemnity for total disability thereafter to July 1941, including hospital expenses, or a total sum of $3600, with a credit of $946.66, leaving a balance due of $2653.36.

■ We think this total was not justified under the policy provisions quoted. Sec. (a) provided for a recovery of $200.00 a month for total *continuous* disability. The provision was for a period of twelve consecutive months, after which indemnity for total disability might be continued for an additional thirty-six months. We find no clause in paragraph (a) or in (b) which provides for re-commencement of payments for total disability following a period in which partial disability existed. Moreover, Sec. (b) explicitly provides that indemnity for partial disability, at one-half the rate for total disability, may be paid following a period of total disability, but for a period not exceeding six consecutive months. The allowance of indemnity for partial disability for a period of sixteen months is not warranted by any provision in the policy—six months was the limit therefor. There could be no re-commencement of payments for total disability since it was not continuous. In an action for fraud we do not see how appellee may recover for losses against which appellant had not contracted to indemnify him.

We think appellant's figures more nearly correct, but with two exceptions. In the judgment, the court made an allowance for total disability at the rate of $200.00 per month for the period commencing on May 6, 1939 and ending August 1, 1939. This period was figured at eighty-five days in Alley's letter, or $566.66, and we find no basis for the allowance of the full three months by the court. Following that, the court allowed indemnity for sixteen months partial disability at half rate; but six months was all that was permitted under the policy, or a total of $600. The court allowed hospital expenses but lumped them in with the monthly allowances. Hospital expenses of $80 were allowed by Alley, and we accept this amount. We find no basis for appellant's assumption that the hospital expenses were borne by the Industrial Commission. These three items, namely $566.66, $600 and $80, total $1246.66, and allowing appellant a credit for the $946.66, already paid Bertman, we find the total amount due to be $300.

The judgment will be modified so as to allow appellee a recovery of $300 in full

of the balance due to him and the case will be remanded to the District Court with directions to enter judgment accordingly.