**Harold M. CANNING, Plaintiff,**
v.
**STAR PUBLISHING COMPANY, a corporation of the State of Delaware, Alexis I. DuPont Bayard, Erwin M. Budner and William E. Taylor, Jr., Defendants.**
**Civ. A. No. 1647.**

United States District Court
D. Delaware.
April 18, 1955.

---

Daniel O. Hastings and Clarence W. Taylor (of Hastings, Lynch & Taylor), Wilmington, Del., for plaintiff.

William E. Taylor, Jr. and Donald C. Taylor, Wilmington, Del., for defendants.

LEAHY, Chief Judge.

Plaintiff, a resident of New Jersey, seeks against the Star Publishing Company, a Delaware corporation, rescission of a release agreement, and from individual defendants Alexis I. DuPont Bayard, Erwin M. Budner and William E. Taylor, Jr., damages for fraudulently inducing the execution of the release. This is a diversity case.

The facts: Plaintiff had been employed as Advertising Director of the defendant corporation under a contract of employment dated June 30, 1952, for the term of five years. The contract provided, inter alia, for the payment of $3,600 in the event of termination of the agreement by Star, in addition to compensation for the full term of the contract. On April 18, 1954, Star discontinued publication of its newspaper known as "the Wilmington Sunday Star". Thereafter plaintiff was informed by Star he would merely receive salary under the contract for only three or four months, and should endeavor to obtain other employment. Defendant Taylor, acting as Star's attorney, informed plaintiff an outstanding liability to one Joseph H. Martin, the former editor and publisher, would exhaust Star's assets, leaving Star without funds sufficient to pay plaintiff. Negotiations between the parties ensued, during the course of which, plaintiff was offered $5,000 for settlement of his claim

by defendant Bayard, President of Star. Relying, plaintiff alleges, upon the representation of defendant Taylor as to Star's financial condition, plaintiff accepted the $5,000, and executed a release prepared by Taylor. This is the release which is sought to be rescinded. The basis of the alleged false representations is Star's liability to Martin was simply an indemnity liability with defendant Bayard and Erwin M. Budner, the Star's Vice-President, as the principal obligors. Hence, plaintiff claims, any payment Star made to Martin should or will be compensated by defendants Bayard and Budner individually.

Defendants filed two motions, one seeking security for costs; the other a dismissal of the action. The motion for security for costs will be considered first.

█ 1. In Newell v. O. A. Newton & Son Co., D.C.Del., 95 F.Supp. 355, Judge Rodney discussed the nature of the court's power to order security for costs. He held requiring such a cost bond is a matter of discretion, in situations where the court finds extraordinary circumstances warrant such security. Defendants fail to demonstrate in what respects the case at bar presents "extraordinary circumstances". True, plaintiff is a non-resident; but so also was plaintiff in the Newell case. There appears little merit to defendants' motion for security for costs. It will be denied.

2. Defendants' motion to dismiss raises two crucial questions: (1) Has plaintiff proffered or made sufficient restoration to defendants as will entitle him to maintain an action for rescission? (2) If the action lies can it be determined as a matter of law there was no justification for plaintiff's reliance upon the statements of the individual defendants?

█ 3. In the law of rescission, restoration of the *status quo* is a condition precedent to maintenance of an action for this equitable remedy. There are, however, certain exceptions to the broad rule. Plaintiff contends his failure to make profert or return of the $5,000 received by him under the release is consistent with one of these exceptions, viz., restoration is not required where the consideration received was in settlement of a larger sum against which it may be credited. Plaintiff cites numerous authorities in support of his position. Most of the cases cited by plaintiff embrace factual situations where the claim released was one calling for the payment of a debt. In short, the claims in suit in those cases were, at bottom, claims on debt and did not arise *ex contractu*. It is noted one case cited by plaintiff involved a claim arising out of a contract of insurance, Provident Life and Accident Ins. Corporation v. Bertman, 6 Cir., 1945, 151 F.2d 1001; another involved a claim for personal injuries, Ross v. Oliver Bros. & Honeycutt, Ct.App.Ky., 1913, 152 Ky. 437, 153 S.W. 756, both of which, of course, were not founded in debt.

The distinction to draw is this: It is clear plaintiff's contention he may credit money already received from defendants would be acceptable where the claim which is sought to be reinstated through the medium of rescission is one of debt, since in such a case the crediting mechanism urged by plaintiff is adaptable to the realities of the situation. But, where the original claim arises *ex contractu* and is by reason of conflict of interpretation of the parties conceivably more susceptible of defense, a court is compelled to speculate as to what plaintiff's original claim for breach is worth. Lacking an accurate financial claim against which to offset the consideration already received, a court could be uncertain whether merely crediting the consideration received is sufficient protection *for defendants' equitable rights* to be placed *in statu quo*.

█ However, in the instant case plaintiff's original claim for breach under the contract of employment is not so speculative and uncertain as to jeopardize any rights defendants have under the contract. Even if defendants are to raise a valid defense as to the remainder of the employment contract, there appears to be already owing (considering plaintiff's salary from the date of the release in addition to the $3,600 "liquidating

damages" clause [1]—which I assume without deciding to be applicable) an amount in excess of $5,000, the amount received under the release settlement.

■ In an action for breach of employment contract, a plaintiff is under a duty to attempt to mitigate the damages flowing from the breach. But the aggrieved party is not compelled to enter into any type of employment, and is permitted to decline a position which will degrade or lower his calling or usual means of support. See 5 Williston on Contracts, § 1359. As to the problem of mitigation of damages paragraph 7 of the employment contract is significant.[2] By its sweep of language it precludes to a marked degree (upon which I shall not pause to speculate) plaintiff's engaging in his accepted calling in the advertising field. To that extent it greatly forecloses possibility of mitigation of damages. Moreover, that part of the restrictive covenant calling for the enforcement of the covenant regardless of the existence of any cause of action predicated upon the agreement, emphasizes the importance which the parties placed upon restricting plaintiff's activities regardless of what their contractual status might be subseqeunt to breach. Since the agreement was drawn up by defendants, it is a web of their own weaving, and may operate against them in this instance.

Absence of the opportunity for substantial mitigation buttresses plaintiff's financial claim to an amount in excess of $5,000 retained and credited by him and thus enhances his position the crediting mechanism should be permitted in the case at bar.

Accordingly, I do not accept plaintiff's theory on the exception to the restitutionary rule where an indefinite claim other than a claim based on debt is involved; but under the facts and the particular provisions of the contract of employment I determine here there appears a sufficient monetary claim in plaintiff's favor to warrant his crediting the $5,000 already received against the amount alleged to be owing. Plaintiff will be permitted to avail himself of the crediting method.

4. Defendants, in support of their motion to dismiss on the ground there was no justification for plaintiff's reliance upon statements made by defendants concerning Star's financial condition, urge the following points: (1) Plaintiff was qualified to make his own estimate of value of Star's assets and was, therefore, precluded from placing reliance on the statements of defendants; (2) defendants' statements did not concern factual matters but were conjectural and opinionated; and (3) the actions of defendant Taylor and his secretary in connection with the information on the value

1. "3. Term: The term of employment shall be five years from the date hereof, subject to the following:

\* \* \* \* \* \*

"(b) Without cause, Star may terminate this agreement at any time upon thirty days written notice to Cannig and shall be obligated to pay to Canning his compensation for the balance of the full term of this agreement plus additional compensation of Thirty-six Hundred Dollars ($3600)."

2. "7. Restrictive Covenants: Upon the termination of this employment, whether by termination of this agreement, by wrongful discharge, or otherwise, Canning shall not, directly or indirectly, within a radius of twenty-five miles of Wilmington, Delaware enter into or engage in any employment as advertising director or manager, or any other equivalent position, with any daily, weekly, or Sunday newspaper, or any commercial publication soliciting paid advertising, either as an individual on his own account, or as a partner or joint venturer, or as an employee, agent or salesman for any person, or as an officer, director, or stockholder of any corporation, or otherwise, for a period of five years after the date of the termination of his employment hereunder.

"This covenant on the part of Canning shall be construed as an agreement independent of any other provision in this agreement; and the existence of any claim or cause of action of Canning against Star, whether predicated on this agreement or otherwise, shall not constitute a defense to the enforcement by Star of this Covenant."

of Star's assets were of such a nature as to apprise plaintiff of suspicious circumstances in the presence of which reliance would have been folly. Plaintiff denies the statements were conjectural or he was aware or should have been aware of any suspicious circumstances.

In consideration of a motion to dismiss, courts do not indulge in resolving factual conflicts, Williams v. Peters, D.C.Mass., 1950, 10 F.R.D. 445. Moreover, a motion to dismiss should be granted only if the complaint would not substantiate a right to relief under any state of facts which could be proved in support of it. Berghane v. Radio Corporation of America, D.C.Del., 1945, 4 F.R.D. 446.

In the instant case, the cross-allegations of justification, *vel non,* raise a triable issue concerning this fact. At this point, in the light of its limited knowledge of the proof, the court can not say, as a matter of law, plaintiff was unjustifiably reliant. Such a determination must await the trial of the case.

Both motion for security for costs and motion to dismiss the complaint are denied. An order may be submitted.