**FRITO–LAY, INC., a corporation, Appellant,**

v.

**MORTON FOODS, INC., a corporation, and William T. Willis, Appellees.**

**No. 7122.**

United States Court of Appeals
Tenth Circuit.
April 18, 1963.

Rehearing Denied May 20, 1963.

Gerrit P. Groen, Chicago, Ill. (Dean A. Olds of Byron, Hume, Groen & Clement, Chicago, Ill., and Ernest P. Rogers of Smith, Kilpatrick, Cody, Rogers & McClatchey, Atlanta, Ga., Byrne A. Bowman of Felix, Bowman, Templin & McIntyre, Oklahoma City, Okl., and Jack Johannes, Dallas, Tex., of counsel, were with him on the brief) for appellant.

Melvin R. Jenney, Boston, Mass. (Richard R. Hildreth and Clarence S. Lyon of Kenway, Jenney & Hildreth, Boston, Mass., and Gordon F. Rainey and Dan M. Welch of Rainey, Flynn & Welch, Oklahoma City, Okl., were with him on the brief) for appellees.

Before BRATTON, LEWIS and HILL, Circuit Judges.

LEWIS, Circuit Judge.

Appellant brought suit against appellee [1] in the District Court for the Western District of Oklahoma alleging unfair competition and trademark infringement and seeking an injunction and treble damages allegedly sustained when the appellee marketed a snack-food product under the name of "Chip-O's." Appellant has been producing and selling various snack-foods under names carrying similar pseudo-Spanish suffixes, such as the registered "Fritos" and "Tatos", and asserted in its complaint that the name

---

1. Appellee William T. Willis is an independent distributor of Morton Foods, Inc., who was joined in the suit for jurisdictional purposes and neither his interests nor contentions are considered separately from those of the company he represents. Thus reference is made only to the principal defendant, Morton Foods, Inc.

adopted by appellee for its product caused consumer confusion wrongfully diverting appellant's business. Appellee entered a general denial and further challenged the validity of appellant's trademarks on grounds of fraud and that no rights could be acquired in the generic endings of words.

After the extensive use of discovery procedures by both parties the cause was set for trial upon the disputed issues and the parties appeared upon the appointed day prepared to go forward. A total of 188 exhibits were offered and received in evidence by preliminary agreement that specific objections could be made as the witnesses referred to the exhibits. Thereupon an extensive, prolonged and searching colloquy occurred between court and counsel which may be described generally as an attempt by the court to familiarize himself with the anticipated testimony of witnesses to be called, the inferences expected by counsel that the court would or could make from testimony, the law applicable to the case and the relation of the testimony to the applicable law. At the conclusion of this procedure the court announced, in effect, that regardless of appellant's tendered proof upon the disputed issues, such proof, although material to the issue, would fail to convince the court that a likelihood of confusion did or could exist between the subject products. From this premise the court concluded that appellant could not succeed, all other issues were immaterial to the ultimate disposition of the case,[2] and that it was his duty to prevent the further time and expense of a prolonged trial. Judgment was ordered in favor of the defendant-appellee.

■ We have had recent occasion to disapprove, but perhaps with insufficient emphasis, the summary disposition of causes through procedures not in accord with the Rules of Civil Procedure.

Wirtz, Secretary of Labor, v. Young Electric Sign Company, 10 Cir., 315 F.2d 326. And where, as here, a complex case is concluded upon its merits after what amounts to no more than the opening statement of counsel we must be clearly shown that the judgment is soundly based. " * * * An expeditious disposition of cases is a cardinal virtue of the administration of justice, but it is not more important than one's fundamental right to his full day in court." Avrick v. Rockmont Envelope Co., 10 Cir., 155 F.2d 568, 573. We are convinced under the circumstances of the case at bar that appellant did not have its day in court.

■ Although it has been stated many different times that the trial court's judgment concerning the interlocking questions involved in a trademark infringement suit will not be disturbed on appeal unless clearly erroneous, Beatrice Foods Co. v. Neosho Valley Cooperative Creamery Association, 10 Cir., 297 F.2d 447; Standard Oil Co. v. Standard Oil Co., 10 Cir., 252 F.2d 65; Drexel Enterprises, Inc. v. Richardson, 10 Cir., 312 F.2d 525, the weight given the trial court's decision relates to its ability to more accurately judge credibility of witnesses present before it. Here, the credibility of witnesses was prejudged and rejected as insufficient to sustain appellant's burden. An outline of appellant's proffered proof clearly shows that such procedure cannot be sustained.

Appellant indicated that witnesses would be called to prove the manufacturing and marketing history of both companies; the establishment of Fritos as a strong and accepted product and the entry of appellee into a pre-conditioned market with its product Chip-O's; the method of selection of the latter name; the impact of the new product upon sales; expert testimony upon impulse buying habits in the retail market; an explana-

2. Very elaborate and complete findings and conclusions were later signed and entered by the court and all disputed issues were determined adversely to appellant's contention. We place no significance in the possible conflict between the court's oral analysis of the case and the formal findings and conclusions. The latter become the basis of review.

tion of the method of taking and the significance of surveys of 5,000 people which had been admitted in evidence as exhibits;[3] and the testimony of some fifteen housewives who had been actually confused in buying the products.

In refusing to hear this testimony after tender by appellant, the court stated:

> "Yes. I accept it as true, but I accept the witnesses' testimony just like that. But, even if they testify like that, I would have to come to the conclusion that for some reason they were mistaken and that they just couldn't have been confused. There is just no likelihood of confusion and I can't see how anybody can possibly be and if somebody testified, as these women have, that they were confused, well, I don't know what you do when somebody testifies to something that you couldn't believe, that you couldn't intelligently come to the conclusion that they actually were."

And in rejecting testimony material to the claim that appellee had abandoned earlier brand names with the intent to "get into a short two-syllable word to fall into a preconditioned market," the court commented:

> "I have assumed that that is entirely possible and therefore true, but if they did intend to, and took the name and used it in such a manner that there wouldn't be any likelihood of confusion, why, I don't see how that would make any difference."

 As in Avrick v. Rockmont Envelope Co., 10 Cir., 155 F.2d 568, the trial court concluded that all of appellant's proffered proof could not overcome his factual impression gained by side to side comparison of the two products and his subjective impression gained by audible comparison. And as in Avrick such comparison cannot conclusively negative the likelihood of confusion as a matter of law nor can it negative confusion as a matter of fact by the expedient of technically accepting the offered proof but summarily rejecting its weight or credibility. The proper administration of justice requires more. Compare Standard Oil Co. v. Standard Oil Co., 10 Cir., 252 F.2d 65.

■ Appellant urges us to remand this case for trial before another judge. We find nothing in this record to warrant such an order and leave to the sound discretion of the trial court the consideration of appellant's understandable reluctance in such regard.

The case is reversed and remanded for further proceedings.

---

3. At the time the court announced his oral opinion he had examined but a few of the 188 exhibits. At the time a motion for new trial was denied the court had examined all the exhibits and reaffirmed his earlier beliefs.