398 P.2d 685

**RELIABLE FURNITURE COMPANY,
a Utah corporation, Plaintiff
and Appellant,**

v.

**FIDELITY AND GUARANTY INSURANCE
UNDERWRITERS, INC., a corporation, et
al., Defendants and Respondents.**

**No. 10182.**

Supreme Court of Utah.

Feb. 3, 1965.

Ind.App. 598, 167 N.E.2d 604 (1960); Willis v. Cloud, 244 La. 623, 153 So.2d 415 (1963).

212

Pete N. Vlahos, Ogden, for appellant.

Hanson & Baldwin, Merlin R. Lybbert, Salt Lake City, for respondents.

CROCKETT, Justice.

Plaintiff sues for losses covered by a business-interruption insurance policy issued by the defendant, American Home Assurance Company; and seeks to set aside a settlement and release on the ground that defendant procured it by fraud and economic duress. At pretrial conference the court granted summary judgment in favor of defendant, from which plaintiff appeals.[1]

During the night of March 31, 1961, a fire substantially destroyed plaintiff's retail furniture business located on Washington Boulevard, near the center of the business district of Ogden. The loss was covered by two insurance contracts, one for loss by fire, issued by Fidelity Guaranty Insurance Underwriters, Inc.; the other covering business-interruption loss, issued by defendant, American Home Assurance Company, both of which had been supplied to plaintiff by the defendant, Western General Agency. Fidelity Guaranty authorized the insurance adjusters to pay the full amount determined as the fire loss, $84,923.58. On June 15, 1961, Mr. Herscovitz, plaintiff's president and manager, herein called plaintiff, had submitted a claim of $48,386 on the business-interruption policy which would start running a 60-day period before the

1. See Rule 16, U.R.C.P., Pretrial conference and Rule 56, Summary judgment.

defendant American Home Assurance Company would be obligated to pay for that loss.

The claim adjusters representing said companies met with plaintiff and his bookkeeper on June 19th, and plaintiff's claims are based on the occurrences at that meeting. With respect thereto he makes these charges: That the meeting was for the sole purpose of considering the fire destruction claim, and that he was not advised that the business-interruption claim would be dealt with at that time; that he did not have his company records there and was never asked about them; that during a general discussion about the fire loss lasting about two hours, as a complete surprise to him, one of the agents "shoved this paper in front of my face", stating that "this is going to be a surprise to you" requiring settlement of the business-interruption loss for $12,000; that plaintiff objected to this and requested his check for $84,923.58 for the destruction loss which had been agreed upon; that the agents rejected this, representing that they couldn't deliver this check unless the business-interruption claim was settled at the same time.

Plaintiff's position is that inasmuch as that settlement had been agreed upon, and

Fidelity Guaranty had authorized the payment, he was entitled to unconditional delivery of the check for the $84,923.58; further, that because his business had been closed down for several months, he desperately needed the $84,923.58, and without it he could not continue in business; that the defendants' agents knew this, that in order to take advantage of his plight, they falsely represented that they could not deliver that money, and wrongfully refused to deliver it, unless he would accept settlement of the business-interruption claim at the same time for the sum of $12,000; plaintiff further claims that it was because of the said false representation and the economic duress thus imposed upon him that he was forced to accept the $12,000 settlement on the latter claim, which was wholly insufficient to reimburse him for the loss covered in the business-interruption policy.

 In determining whether the plaintiff is entitled to redress, it is not essential that his contentions of fraud and duress be considered separately. They can and should be considered on the basis that he contends they existed, intermingled together.[2] It is to be conceded that ordinarily the fact that one is in financial need which is a factor in inducing him to accept a settlement will not of itself provide a basis for

**2.** Cf. United States v. Bethlehem Steel Corp., 23 F.Supp. 676, 113 F.2d 301, 315 U.S. 289, 62 S.Ct. 581, 86 L.Ed. 855;

id., 315 U.S. at 312, 62 S.Ct. at 593 (Frankfurter, J., dissenting).

relief.[3] But that is not the entire picture here. If we accept the facts as plaintiff contends them to be, as we are obliged to do on this review,[4] we must assume not only that the plaintiff was in economic distress, but that the defendant knew this and took advantage of him by falsely representing that money belonging to the plaintiff could not be delivered to him, and wrongfully refusing to deliver it unless plaintiff would also accept the proffered settlement on defendant's policy, which resulted in compelling plaintiff to accept the latter settlement against his will. If found to be true, this false representation, coupled with the wrongful withholding of that which belonged to plaintiff, may well justify a finding of duress which would afford him relief from the settlement.[5]

 The defendants also raise the objection to plaintiff's suit that it should have returned or tendered the $12,609.39 as a condition precedent to seeking rescission of the settlement. One pertinent observation on this point is that it has been held, and properly so, that where a release

of a claim has been obtained by fraud, a return or tender of the consideration paid therefor is not a necessary condition precedent to disaffirmance of the release and enforcement of the claim.[6] In any event, the matter of tender would not be controlling here because at the pretrial conference, when the court questioned the plaintiff about the matter, he stated that he would deliver the money. The colloquy was as follows:

"THE COURT: Can it be agreed that this plaintiff is not now in position to tender the money which he's received from the American Home Assurance Company?

"PLAINTIFF'S COUNSEL: No, Your Honor. We will tender it into court.

"THE COURT: Have you got it now?

"PLAINTIFF'S COUNSEL: We can get it."

The order of dismissal rendered the matter moot.

 Even more fundamental on this point is a reflection upon the fact that

3. Manno v. Mutual Ben. Health & Accident Assoc., 187 N.Y.S.2d 709, 712 (Supreme Ct. Queens County 1959); Kelly v. United Mut. Ins. Assn., 112 S.W.2d 929, 932 (Mo.App.1938).
4. Thompson v. Ford Motor Co., 16 Utah 2d 30, 395 P.2d 62, 63 (1963).
5. See Manno v. Mutual Ben. Health & Accident Assoc., supra note 4, 187 N.Y.S.2d at 713, for an excellent compilation of authorities relating to fraud and economic duress; concerning duress, see Fox v. Piercey, 119 Utah 367, 227 P.2d 763 (1951); Ellison v. Pingree, 64 Utah 468, 231 P. 827 (1924).
6. See Coke v. Timby, 57 Utah 53, 60, 192 P. 624, 626 (1920); see Ted Price Construction Co. v. Cascade Natural Gas Corp., 307 F.2d 741, 743 (9th Cir. 1962); see, in general, 45 Am.Jur., Release, § 53; Annot., 134 A.L.R. 6 (1941); 76 C.J.S. Release § 37, at p. 663.

the paramount objective is always to do justice between these parties.[7] Upon the basis of the record thus far developed, it appears that the defendant's own figures show it owes the plaintiff the $12,609.39. In the event of further proceedings the defendant can be protected by having that credit against the amount, if any, in excess thereof that may be awarded upon final judgment.[8]

It is appropriate to reiterate that the dismissal of an action at pretrial, which peremptorily turns a party out of court, is a drastic action which should be used sparingly and with great caution.[9] This is especially true where the dismissal is ordered without any motion for summary judgment being filed to put the party on notice of such contemplated action and afford him an opportunity to meet it.[10]

The summary disposal of a case serves a salutary purpose in avoiding the time, trouble and expense of a trial when it is justified. But unless it is clearly so, there are other evils to be guarded against. A party with a legitimate cause, but who is unable to afford an appeal, may be turned away without his day in court; or, when an appeal is taken, if a reversal results and a trial is ordered, the time, trouble and expense is increased rather than diminished.[11] It is to avoid these evils and to safeguard the right of access to the courts for the enforcement of rights and the remedy of wrongs by a trial, and by a jury if desired, that it is of such importance that the court should take care to see that the party adversely affected has a fair opportunity to present his contentions against precipitate action which will deprive him of that privilege.[12] His contentions as to the facts should be considered in the light most favorable to him, and only if it clearly appears that he could not establish a right to recovery under the law should such action be taken; and any doubts which exist should

7. See Padovani v. Bruchhausen, 293 F.2d 546, 547–548, 550 (2d Cir. 1961) (Clark, Circuit Judge); see, in general, Note, Federal Pre-Trial Practice, 51 Georgetown L.J. 309, 337–341 (1963).

8. Coke v. Timby, supra note 6; Taxin v. Food Fair Stores, Inc., 197 F.Supp. 827, 831 (E.D.Pa.1961); McLaughlin v. Chief Consol. Mining Co., 62 Utah 532 at 551, 220 P. 726, at 733–734; Restatement, Contracts, § 480(2) (c) (1932), cited in Provident Life & Accident Ins. Co. v. Bertman, 151 F.2d 1001, 1005 (6th Cir. 1945).

9. See Tangren v. Ingalls, 12 Utah 2d 388, 367 P.2d 179 (1961).

10. See Buffington v. Continental Casualty Co., 69 N.M. 365, 367 P.2d 539, 542–543 (1961); United States v. Jeffers, 90 F. Supp. 356, 357–358 (D.Ore.1950); Murphy v. Kelly, 28 N.J.Super. 266, 100 A. 2d 558 (1953); see, in general, 3 Moore, Federal Practice, para. 16.04 (1963 Supp.); 72 Yale L.J. 383, 390 (1962).

11. Glisan v. Kurth, 384 P.2d 946, 949–950 (Colo.1963); see Wirtz v. Young Electric Sign Co., 315 F.2d 326, 327 (10th Cir. 1963); Frito-Lay, Inc. v. Morton Foods, Inc., 316 F.2d 298, 300 (10th Cir. 1963).

12. See Art. I, Sec. 11 Utah Constitution.

be resolved in favor of affording him the privilege of a trial.

█ Upon consideration of the record as it has come to us we cannot conclude with such certainty as to justify ruling as a matter of law that there was no duress and/or fraud practiced upon the plaintiff in obtaining the release in question. Accordingly, it is necessary that the cause be remanded for trial. It is so ordered. Costs to plaintiff (appellant).

McDONOUGH, WADE and CALLISTER, JJ., concur.

HENRIOD, Chief Justice (dissenting).

I have considerable difficulty in not concurring with the main opinion,—or at least in the result. Nonetheless, I think the trial court was on solid ground by indicating that without a tender back of the $12,000 received, the plaintiff was not entitled to move ahead with his litigation. The evidence is without doubt that the plaintiff accepted an $84,000 check to settle one type of liability and a $12,000 check for another type, covered by different companies. It seems significant that he cashed the big one immediately, but held the little one for nine days before he cashed it. His whole theory was that because he needed the $12,000 *right now*, because of necessitous circumstances, he was impelled or forced to accept it through economic coercion of defendant. In waiting nine days, without any tender back because of prior duress of defendant, then deliberately cashing it and using the proceeds, does not bespeak a lack of mutuality in measuring the length of the Chancellor's foot.

Plaintiff never did tender this money before, at the inception of, or during a protracted discovery procedure that culminated in a pretrial conference. Then the trial of this case became a matter of immediacy. At this juncture the trial court inquired simply if the plaintiff had tendered back the $12,000 to which plaintiff said, "No," and gave as an excuse that he didn't think he had to, since he believed he could simply hold it in reduction of his claim.

This contention assumes that the court or jury had to find, without question, that his claim would be in excess of $12,000. The insurance company and the trial court took umption with such conclusive assumption or presumption.

The main opinion cites Coke v. Timby to support its contention that a tender was not necessary. Aside from some dictum to the effect that in another case one who could not read or write English, and wouldn't know what he had signed anyway, would not be charged with a tender, the law of the Timby case was to the effect that a tender *was* made in court and *refused,* hence the condition precedent was

inoperative. The main opinion here then cites the McLaughlin case in support of its conclusion. That case simply cited the Timby case to support a rule foreign to and not warranted by the main opinion's conclusion here. The opinion also cites Sec. 480, Restatement of Contracts. Doing so, it ignores the language which says, "The power of any party * * * to avoid a transaction for fraud or misrepresentation is conditional on an offer made promptly after acquiring knowledge (thereof) to *return the amount of any money* * * * received." Then, in a subsection upon which the main opinion relies, it excepts the case where "it is merely money paid, the amount of which can be credited in partial cancellation of the injured party's claim."

The main opinion, I think, has misread the whole of Sec. 480. The meat of it is that you must tender the money back before any amount involved will have been determined in futuro, which is the case here, but that the subsection about crediting an amount received in diminution of the injured party's claim, assumes that such injured party's claim has been determined in praesenti. Any other interpretation of Sec. 480 would attribute to its authors an affinity for inconsistency.

I take exception to the main opinion's implication that the trial court decreed as it did on grounds other than lack of tender and hence such position was moot. I got the distinct impression from reading the record that this very circumstance was the concessum of the trial court.

The statement in the main opinion that the matter of tender was moot, quoting a colloquy, is accurate because such mootness was apparent and controlling because of the trial court's accurate recognition of the law in contradiction to this court's inaccurate, sloughing off a legal concept with the easy, acrobatic, aphoristic superficiality that "the paramount objective is always to do justice" and therefore something that rightly should be "moot" is now "unmoot." The defendants and the trial court apparently felt that justice had been effected before this court started quoting scripture. I think the trial court mooted this case out on stare decisis and simple principles of equity, proven by the very citations adverted to in the main opinion.

It is significant that no tender was made even after the colloquy adverted to, so far as the record here reflects, and that the position of plaintiff was provoked by the same kind of error indulged by the main opinion in lifting out of context a subsection of Sec. 480 of the Restatement.